On application for a rehearing, the defendant contends that Broadway Avenue embraces a portion of the property owned by it; and hence, it is urged, the Court should determine the legal efficacy of the contract between the Rapides Parish Police Jury and the defendant. In view of this contention, we have again carefully studied the record on this point. The record does not reflect that Broadway Avenue encroaches upon the property of the defendant.

Accordingly, the application for rehearing is denied.

126 So.2d 355

Mrs. Martha DANE

v.

CANAL INSURANCE COMPANY et al.

No. 45013.

Dec. 12, 1960.

Rehearing Denied Feb. 15, 1961.

Hayes, Harkey & Smith, Monroe, for defendants-appellants and applicants in writ.

Ellis & Ellis, Rayville, for plaintiff, appellee, and respondent in writs.

HAMITER, Justice.

In this suit (which, after the joining of issue, was consolidated and tried with five other tort' actions hereinafter mentioned) the plaintiff, Mrs. Martha Dane, demands damages for serious personal injuries sustained in a collision between a Ford automobile in which she was a passenger and a Chevrolet taxicab owned by Scott Harrison and insured by the Canal Insurance Company, the defendants. Judgment was rendered in the district court in favor of plaintiff and, on an appeal, it was affirmed by the Court of Appeal. 116 So.2d 359. The cause is now before us on a writ of certiorari applied for by the defendants.

The accident, classified as a "head-on collision" type, occurred about 10:40 p. m. on February 23, 1957, during or shortly after a drizzling rain, on U. S. Highway 80 approximately two miles west of Holly Ridge and six miles east of Rayville in Richland Parish. At such point the road courses east and west, is of black top or asphalt construction, and has two lanes. The plaintiff, her husband (Curtis Dane) who was driving the Ford automobile, and a Mrs. Donna Compton were traveling

west en route from Fort Lee, Virginia, to Weatherford, Texas, a distance of some 1300 miles. Before and at the time of the collision the two ladies were asleep and, hence, had no knowledge of the circumstances leading to it. Curtis Dane had been driving continuously for about 27 hours, except for time out for meals, rest stops and the purchasing of gasoline and oil. Along the way he had obtained and taken some "no-doz" pills. As a result of the accident Dane was rendered unconscious, and he remained in that condition for some 11 days. In this connection he testified during the trial: "I don't know anything about the accident at all * * * I can't give any reason for it, but the last that I can remember was the little community of Holly Ridge". (This community was about two miles east of the scene.)

The taxicab, driven by one Wesley McDonald who was employed by the defendant owner Scott Harrison, proceeded east on Highway 80 and contained three fare-paying passengers named and seated as follows: Ellen Gasper in the right front, Willie Mae Booker in the right rear, and Olivia Brown in the left rear (behind the driver). Of the four occupants only the last named two, who were seriously injured, survived the crash.

Willie Mae Booker, Olivia Brown and the legal representatives of the decedents, Wesley McDonald and Ellen Gasper, instituted four separate tort actions against Curtis Dane's insurer, the Southwest General Insurance Company. Mrs. Dane also filed a suit, in addition to her instant action, against the named insurer of Dane. Thereafter the six cases, following the joining of issue in each, were consolidated and tried together.

In the present cause, as before shown, the district court rendered judgment in favor of Mrs. Dane and against the defendants Scott Harrison and the Canal Insurance Company. However, it dismissed all of the five suits brought against Dane's insurer, the Southwest General Insurance Company, including that of Mrs. Dane.

Both of Mrs. Dane's suits were appealed, as was one of the four other actions; but the judgment in each was affirmed by the Court of Appeal. 116 So.2d 359; Dane v. Southwest Gen. Ins. Co., 116 So.2d 362; McDonald v. Southwest Gen. Ins. Co., 116 So.2d 363.

Application to this court for the writ of certiorari was made only in the instant cause (and it was granted, as before stated). Consequently, the judgments in the remaining five suits have become final; and there is presented for our consideration herein solely the matter of liability of the taxicab owner and his insurer for Mrs. Dane's injuries resulting from the accident.

In the course of its opinion the Court of Appeal observed: "The issues presented for determination are entirely factual in nature. It may be stated, however, at the

outset there is no substantial evidence that either vehicle was exceeding the legal speed limit, nor does the evidence support the charges that Dane swerved or 'zigzagged' his car across the highway, or that he failed to keep a proper lookout, or that his driving was in any manner adversely affected by fatigue. The extent and nature of the damage to each car were comparable. The issue is therefore restricted by the evidence to the question of which car, at the time of the collision, was on the wrong side of the highway." [116 So.2d 361.]

The Court of Appeal then went on to announce its finding, based almost entirely on the testimony of one James D. Baker, a state trooper who appeared at the scene shortly after the accident, that the point of impact was in the north or Dane's lane of the highway. And it concluded that, therefore, the collision was solely the result of McDonald's improper and negligent steering of his taxicab across the center line and into the opposing lane of travel.

In this court defense counsel strenuously dispute the correctness of such finding that the accident occurred in the north lane. With reference to this issue we have thoroughly examined the evidence, and we agree with counsel that it is not at all conclusive in plaintiff's favor. Baker testified simply that the major portion of the debris that fell from the colliding vehicles appeared to him to be in the north lane near the center line and that his determination of the point

of impact was based on that consideration. However, he stated that he did not make his investigation until some 30 minutes after his arrival on the scene, during which period he engaged in the removal of some of the injured; that throughout this intervening time the north lane was blocked by the Dane automobile and all of the traffic, of which there was considerable, was routed over the south lane; and that while he found only a small quantity of debris in the latter lane it was entirely possible that the passing traffic could have resulted in the removal of much more therefrom. Furthermore, James D. Parnell, an insurance adjuster who investigated the accident for the defendants on the second day after the occurrence, testified that at the scene he found an oil slick leading from the south lane across and north of the center line to the Dane car's resting place, at which point there was a large oil deposit. And photographs taken by him, which disclosed such oil slick, were introduced to substantiate his testimony.

But be that as it may we, for the reasons hereinafter noted, need not and do not determine the above discussed issue respecting the actual point of impact.

More important for our consideration herein, we think, is defendants' complaint regarding the Court of Appeal's failure to pass upon and sustain their specially pleaded defense that momentarily before the impact the taxicab driver was confronted with

a sudden emergency caused by the fact that Dane swerved or zig-zagged his car across the highway, they pointing out that plaintiff had affirmatively alleged such fact (the allegation was admitted by defendants in the answer) and further that she herself had introduced evidence which conclusively proved it.

In her petition plaintiff averred: "At about the hour of 10:40 o'clock p. m. on the date in question (February 23, 1957), the automobile in which petitioner was riding was being driven through Richland Parish, Louisiana, in a westerly direction, as aforesaid, and at a speed of about 60 miles per hour. There was a drizzle of rain, and the surface of the highway was damp. Upon reaching a point along said highway about two miles west of Holly Ridge, Curtis Dane, the driver of the Ford automobile in which petitioner was riding, for some reason allowed the vehicle to swerve, or encroach over into the south, or opposite, lane of travel several times, in the face of oncoming traffic.

"At the time that the automobile in which petitioner was riding committed the encroachment on the opposite lane of travel, there was approaching from the west a 1955 Chevrolet sedan, bearing Louisiana registration plate for the year 1957 No. 950–939. The oncoming 1955 Chevrolet sedan was owned by defendant Scott Harrison, and being operated at the time as a taxi-cab by Wesley McDonald, servant and employee

of the owner, who was acting within the course and scope of his employment and at the time engaged in taking some fare-paying customers to their home in or near Holly Ridge, Louisiana. The said taxi-cab was proceeding in an easterly direction along the South lane of highway 80 at a speed of about 50 miles per hour."

Supported by considerable and respectable authority the defendants urge that the quoted allegation of encroachment was binding on plaintiff, particularly since they specifically admitted it in their answer; and that such alleged fact must, insofar as their liability is concerned, be taken as true even without the introduction of any evidence in support thereof. (In so contending they properly recognize that their admission could have no effect whatever against the defendant in the other five suits—Dane's insurer—which denied the allegation.)

However, the defendants, for the purpose of strengthening their position and of further substantiating their complaint relative to the Court of Appeal's decision, show that plaintiff presented at the trial uncontradicted evidence that affirmatively and undeniably proved her factual allegation of Dane's encroachment into the south lane, thereby warranting the application of the doctrine of sudden emergency.

The mentioned doctrine invoked and relied on by defendants, which has been repeatedly recognized in our jurisprudence,

is well stated in Snodgrass v. Centanni et al., 229 La. 915, 87 So.2d 127, 131, as follows: "One who suddenly finds himself in a position of imminent peril, without sufficient time to consider and weigh all the circumstances or best means that may be adopted to avoid an impending danger is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to have been a better method, unless the emergency in which he finds himself is brought about by his own negligence. Under such circumstances, our law does not require a driver to exercise such control or the same degree of care and caution as is required of a person who has ample opportunity for the full exercise of judgment and reason. Commercial Standard Ins. Co. v. Johnson, 228 La. 273, 82 So.2d 8." See also Teche Lines, Inc. v. Gorum et al., 202 La. 993, 13 So.2d 291 and the numerous cases therein cited.

From the record herein we find that during the trial plaintiff called as her own witnesses Olivia Brown and Willie Mae Booker, the surviving passengers in the taxicab. The former testified that immediately prior to the impact, while the taxicab was traveling between 40 and 45 miles per hour in the south or its right lane, she saw the Dane car swerving or "zig-zagging" three times across the center line; and that on the "last zig he hit this car we was in". She further stated that the zig-zagging of the oncoming machine was first noticed when such car was "about as far as from here to Lawyer Coenen's office", which distance was later stipulated by counsel to be 210 feet.

Tending to corroborate Olivia Brown's testimony was that given by Willie Mae Booker who stated that the taxicab in which she was riding was traveling 40 to 45 miles per hour in the south lane; that, although she had not at first observed the approaching automobile since she was looking to the side, she heard the driver McDonald say as he applied his brakes: "Lord, I wonder what's wrong with the man"; and that when she looked up the Dane car "was coming into us from the left."

The above testimony of Olivia Brown and Willie Mae Booker, witnesses called by plaintiff herself, was in no manner contradicted or discredited and is in keeping with the factual allegation of encroachment contained in plaintiff's petition (which was admitted by defendants, as before stated, in the answer). Consequently, it must be given effect in the determination of this litigation. And, this being true, under the doctrine of sudden emergency (and for the hereafter stated reasons) we are compelled to hold that the taxicab driver was guilty of no actionable negligence respecting the collision which resulted in plaintiff's injuries.

When the mentioned zig-zagging commenced the two vehicles were only 210 feet apart. At that time the taxicab was travel-

ing in its proper lane at about 40 miles per hour or 58 feet per second, and admittedly the Dane car was proceeding at 60 miles per hour or 88 feet per second—a combined approach speed of 146 feet per second. The taxicab driver, accordingly, had less than two seconds (including normal reaction time) to prevent the collision. From which it can only be concluded that he was faced with a sudden emergency—he found himself in a position of imminent peril—without sufficient time to consider and weigh means for avoiding the impending danger.

The district judge, in referring to the testimony of Olivia Brown, remarked: "If that testimony be true, and the driver of the taxi-cab was looking in the direction in which he should have been looking, then, it would have been the natural thing for him to do to pull as far to his right towards the south shoulder of the said highway, which shoulder was established to be at least six feet wide. This, he did not do." As we appreciate the record regarding the width of the highway shoulders (only the testimony of the state trooper appears to disclose it) each shoulder was approximately three feet wide and was bordered by a rather deep ditch. Again, under the circumstances above pointed out the taxicab driver was not required to exercise such control or the same degree of care and caution as is demanded of a person who has ample opportunity for the full exercise of judgment and reason.

Furthermore, in view of such circumstances and of the sudden emergency doctrine it is immaterial if the taxicab driver, in attempting to avoid the collision, suddenly steered his vehicle across the center line and into the path of the Dane car as the latter was returning to the north lane.

For the reasons assigned the judgment of the Court of Appeal (which affirmed that of the district court) is reversed and set aside and this suit is dismissed at plaintiff's cost.

On Application for Rehearing

PER CURIAM.

In the application for rehearing filed in this cause, our attention has been directed to a statement made in the original opinion that the highway was bordered by "a rather deep ditch." It is strenuously urged that this is an erroneous statement of fact.

This statement in the opinion was made *en passant*, and the depth of the ditch was of no great importance to our decision. However, we deem it necessary to state that upon reconsideration of the photographs introduced and the testimony elicited, it is our conclusion that the ditch is not necessarily a deep one, although there is a decided downward slope away from the shoulder of the highway. This fact in no way changes the application of the sudden emergency doctrine.

The application for rehearing is denied.