BARNETTE, Judge.
This is a suit brought by plaintiff, Anthony J. Saladino, individually and on behalf of his minor son, Victor J. Saladino, against defendants Arthur E. Bomati and his automobile liability insurer, The Fidelity and Casualty Company of New York (hereinafter referred to as Fidelity), arising out of a collision of plaintiff’s motorcycle, driven by his minor son, with defendant’s automobile. Judgment was rendered in favor of plaintiff in the amount of $5,157.04, including $967.04 medical expenses and $190 property damage. From this judgment defendants Bomati and Fidelity have appealed.
Before judgment was rendered on September 3, 1968, defendant Arthur E. Boma-ti died. By a stipulation agreed to by the parties, the appeal was continued on behalf of Fidelity without the necessity of correcting the trial court’s judgment. It was further stipulated that any recovery would be limited to the limits of the insurance policy, which was agreed to be $5,000 for any one personal injury and $5,000 for property damage.
The collision occurred about 4:30 p. m., July 30, 1965, at the “T” intersection of Hammond Highway and Seminole Street in the parish of Jefferson. Hammond Highway runs in an east-west direction along the Lake Pontchartrain levee, and Seminole Street runs in a north-south direction, forming a “T” intersection where Seminole Street runs into Hammond Highway. Hammond Highway is a paved street measuring 22 feet in width with a 3-foot shoulder on the northern edge and a 6-foot shoulder on the southern edge. Seminole Street is a paved street 20 feet in width. Approximately 290 feet west of the intersection, Hammond Highway makes a sharp curve to the left. A westbound motorist has unobstructed vision to that point.
Defendant Bomati was operating his automobile in a westerly direction on Hammond Highway and Victor Saladino, a young boy of 14 years, was operating his motorcycle in the opposite direction on said highway. Upon arriving at the Seminole Street intersection, Bomati turned left into the street and was struck in the extreme right rear of his automobile by the motorcycle.
The only witnesses to the accident were the operators of the respective vehicles. Mr. Bomati testified that when he was approximately 100 feet from the intersection he applied his directional signal and prepared to execute a left turn into Seminole Street. He testified that at that point he did not observe the approaching motorcycle and the road was free and clear of traffic. His first awareness of the motorcycle was when he heard the sound of its motor and observed the Saladino boy travelling in an easterly direction on Hammond Highway approximately 190 feet from the intersection. He testified that at this time he had executed his turn into Seminole Street with only 8 feet of his vehicle still on the *627 eastward bound lane of Hammond Highway. His first impression after impact was that he had collided with an automobile which he had observed stopped at the stop sign on Seminole Street waiting to turn into Hammond Highway.
Victor Saladino testified that he was travelling eastward on Hammond Highway at the rate of 20 to 25 miles per hour when he first observed defendant approaching from the opposite direction. His testimony was that defendant’s directional signals were not on as he approached the vehicle. He stated that when he was approximately one to three car lengths from the intersection, defendant made a sharp and sudden turn into Seminole Street. He applied his brakes and swerved to the right in an attempt to avoid collision with the turning vehicle. He admitted striking defendant’s vehicle near the extreme right rear portion of the automobile but emphatically stated that he was still on the paved surface of Hammond Highway at the time of impact.
The trial court judge in his reasons for judgment stated:
“The Court is of the opinion that Sal-adino’s version of the accident, more accurately reflects the circumstances and conditions surrounding its occurrence. Why the defendant failed to timely discover the presence of the oncoming motorcycle, prior to his making a left turn, was never satisfactorily explained. Furthermore, his estimated distance of 190 feet, when he first observed the other vehicle, was obviously erroneous, even though he allegedly subsequently paced it off. Apparently, the excitement of the accident caused him to become confused as regards this aspect of his testimony. It is literally impossible for the motorcycle, moving at 25 miles per hour, to traverse 190 feet, in less time than it would have required for the automobile to move 8 feet.
“A motorist making a left turn, which is considered an extremely dangerous maneuver, has the legal duty to first ascertain that he can safely do so, without causing damage to oncoming vehicles, lawfully proceeding thereon. If he has neither sufficient time or distance to execute his turning movement, he must refrain from doing so, until circumstances will permit its safe execution. The driver of the turning vehicle is charged not only with seeing what he should have seen, but further with the proper evaluation and correlation of existing traffic conditions, as they relate to a prudent and judicious determination that the intended movement can be undertaken without interfering with, or causing damage to approaching vehicles. Mr. Bomati’s failure to fulfill these obligations constituted negligence, which efficiently caused the accident.

“There is insufficient evidence to sustain defendant’s plea of contributory negligence, nor did he bear the burden of proof necessary to warrant invoking the last clear chance doctrine.
“More specifically, it was never established that Saladino actually discovered, or was in a position where he could or should have discovered, Bomati in a position of peril, and by the exercise of reasonable care, could have avoided the accident. On the contrary, the Bomati car was two or three lengths away, when it made a left turn in front of the Sala-dino motorcycle. Confronted with this emergency, the cyclist applied his brakes and swerved to the right, the same direction in which the defendant’s car was headed, striking the latter vehicle.
“To contend at this time, that the accident could have been avoided by the plaintiff swerving his motorcycle to the left, rather than his right, is pure speculation. Perhaps such a determination can now be made because the pattern of movement of the defendant’s car is known to us, but the plaintiff did not have the benefit of this knowledge, when he was required to spontaneously react. Would the conclusion have been the *628 same had Mr. Bomati vigorously applied his brakes, rather than proceed through the intersection?
“Our appellate courts have repeatedly held that a motorist, suddenly confronted by an emergency not of his own making, is not negligent in failing to react with the same degree of reasonableness and prudence, as would be exacted if made, under similar circumstance free of ■ the stress of the immediate peril and danger created by the critical situation.”
The foregoing conclusions of the trial judge are accurate statements of the jurisprudence on these subjects and with his conclusions we fully agree. See Dane v. Canal Insurance Company, 240 La. 1038, 126 So.2d 355 (1960); Washington Fire & Marine Ins. Co. v. Firemen’s Ins. Co., 232 La. 379, 94 So.2d 295 (1957); Bankston v. Bueche, 206 So.2d 532 (La.App. 1st Cir. 1968); Ellender v. Attaway, 186 So.2d 171 (La.App. 1st Cir.1966); Methvin v. Roshto, La.App., 96 So.2d 383 (La.App. 1st Cir. 1957); LSA-R.S. 32:122.
This case involves primarily fact questions to be determined by the trial court judge. It is so well established in our jurisprudence that the findings of the trier of fact will not be disturbed by the reviewing court in the absence of manifest error, that citation of authority is unnecessary. After a careful review of the pleadings, exhibits and testimony filed in evidence, it is our opinion there is no manifest error in the trial court’s conclusions, which we adopt as our own.
The undisputed testimony of Dr. Daniel E. Schechter, an orthopedic surgeon and Victor Saladino’s treating physician, was that the young man sustained a fracture'of the right tibia, a fracture of the first metacarpal of the right hand, and a severe laceration of the chin. He remained in the hospital a week following the accident. His leg and hand were placed in casts, with the right cast being removed approximately three weeks after the accident. He was confined to a wheelchair until September 24, 1965, at which time he was allowed the use of crutches until January, 1966, after which he was placed under conservative treatment until his discharge in August, 1966. The laceration of the chin left a permanent scar measuring 9 centimeters in length and 5 centimeters in width which would require revision by plastic surgery. It was stipulated by the parties that if judgment was rendered in favor of plaintiff, the property damage to the motorcycle would be $190.
In view of the seriousness of the injuries, we do no feel there is any error in the awards of the trial court judge.
Therefore, for the above-given reasons, the judgment appealed from is affirmed at appellant’s cost.
Affirmed.