326 So.2d 481 (1976)
Dolores Weathers Breaux, wife of, and Irvin BREAUX, Sr., Plaintiffs-Appellees-Relators,
v.
The STATE of Louisiana et al., Defendants-Appellants-Respondents.
No. 56707.
Supreme Court of Louisiana.
January 19, 1976.
William J. Guste, Jr., Atty. Gen., Robert C. Funderburk, Jr., Asst. Atty. Gen., for defendant-applicant.
David L. Morgan, Jr., Mandeville, for plaintiff-respondent.
TATE, Justice.
The plaintiff parents sue for the death of their son. Their boy was murdered while an inmate in the state penitentiary.
The court of appeal awarded them each ten thousand dollars general damages, together with their son's funeral expenses. Reversing the trial court, the intermediate court held that the son's death resulted from the state's failure to provide adequate facilities and supervisory personnel to assure the reasonable safety of inmates. 314 So.2d 449 (La.App. 1st Cir. 1975).
*482 We granted certiorari, La., 320 So.2d 548 (1975), because some members of the court felt that the holding in the case was in conflict with Parker v. State, 282 So.2d 483 (La.1973).
In Parker, a majority of this court concluded, 282 So.2d 486:
"A penal institution is not an insurer of an inmate against attacks by other inmates. The standard is that of reasonable or ordinary care. The majority rule is that in order to hold the penal authorities liable for an injury inflicted upon an inmate by another inmate, the authorities must know or have reason to anticipate that harm will ensue and fail to use reasonable care in preventing the harm. St. Julian v. State, La.App., 98 So.2d 284 (1957); 60 Am.Jur.2d, Penal and Correctional Institutions, § 17, p. 821 (1972); 72 C.J.S. Prisons § 13, p. 866; Annot., Prison-Assault by Prisoner, 41 A.L.R.3rd 1021, 1028-1029 (1972)." (Italics ours.)
We find that, even under this standard enunciated by Parker, the state is here liable for its employee's failure to use reasonable care in preventing harm after they had reasonable cause to anticipate it. It is therefore unnecessary for us here to decide whether, additionally, the broader rule adopted by the majority of the court of appeal should applynamely, that the state may be liable as well for its negligent failure to provide a sufficient number of guards and sufficient security arrangements and equipment to assure reasonable safety to the inmates under its total custody (who are thus deprived of lawful means to protect their own safety).
The Negligence of the State's Employees
The circumstances are detailed in the court of appeal opinion. For present purposes, it is sufficient briefly to summarize those that occurred on the morning of the decedent's murder by some fellow inmates, Carney and Dixon.
The decedent Breaux was killed as a result of his efforts to protect a young prisoner newly admitted from homosexual assault by Carney and Dixon. Breaux was a member of "The Brotherhood", an inmate organization recognized by the prison authorities and formed for the purpose of protecting younger inmates from the homosexual attacks by hardened inmates likewise confined in the penitentiary.
The new young inmate, Moore, eighteen years of age, was released into the prison population two days before Breaux's murder. During the two days (and nights) in the first dormitory to which assigned, two hardened criminals, Dixon and Carney, had threatened Moore with knives in an attempt to force him to become Carney's penitentiary "wife". Breaux's murder directly resulted from his efforts to thwart the forceable homosexual servitude of Moore intended by these criminals.
On the morning of the murder, Moore had complained to Lieutenant Dupree and Captain Pittman that four or five of his dormitory mates had threatened him with knives and that he had escaped harm only by going on his knees. He requested to be moved from the dormitory.
Several minutes later, Carney saw Lt. Dupree and asked that the young inmate not be moved. Lt. Dupree and Captain Pittman assumed from Carney's conversation that Moore was to be his penitentiary wife.
Based on their investigation, Lt. Dupree and Captain Pittman learned that Carney was one of those who had threatened Moore with, a knife. However, they did not search Carney's bunk or belongings to find the knife, they testified, because they feared for Moore's life if they did so so soon after Moore had come to their office.
Within about thirty minutes of Moore's complaint, Captain Pittman and Lt. Dupree found six inmates, including Breaux and Moore, in close conversation in the yard.
*483 The subject of the conversation was how to protect Moore from becoming homosexually subjugated by Carney and Dixon in the dormitory to which initially assigned.
The testimony indicates, variously, that Carney and Dixon were either nearby during this discussion, sometimes heated, or that they participated in it. Moore testified that Carney and Dixon objected vigorously to the suggested plan to move him out of their dormitory.
Dupree and Pittman were not present during most of the discussion. However, they evidently got the gist of it. As Lt. Dupree frankly testified: "I asked inmate Breaux, I says well, here's a fellow [Moore] here that's in trouble, if I would help him to move him in your dormitory, I said, could you see he stays straight, you know, keeps out of trouble * * *" Tr. 204. Lt. Dupree testified that he had selected Breaux, as an older and settled convict living in a quiet dormitory, in order that Moore could be kept safe from the trouble that threatened him in the other dormitory. Tr. 205.
Immediate approval was secured by telephone from higher authority for Moore's transfer from the Carney-Dixon dormitory to the Breaux dormitory. Breaux secured permission from Benoit, a dormitory guard, to help Moore remove his effects from the Carney-Dixon dormitory. Benoit accompanied Breaux and Moore into the dormitory.
Benoit was a new guard, this being his first day on dormitory duty. (Previously, he had worked in an office or in trustee areas.) As the three proceeded down the dormitory aisle, Carney and Dixon attacked Breaux and Moore with knives. The guard Benoit immediately bolted out of the dormitory to go for help.
Guillot, a more experienced guard, at once entered the dormitory, saw the inmates fighting, and shouted to them to stop. Carney did so, while another inmate grabbed Dixon. However, as Guillot walked up to Breaux (who had fallen on to the floor), Dixon broke loose and stabbed Breaux once again before Guillot pulled him off.
Breaux was dead of multiple stab wounds. The trial court accepted the evidence as preponderating that Breaux was unarmed at the time of the assault upon him, as was Moore.
Both the trial court and a majority of the court of appeal felt that the State was not liable under the test enunciated by Parker v. State, above-quoted, because, while the penitentiary guards had reasonable cause to anticipate harm to Moore (the young inmate), no evidence proved they knew of threats to harm Breaux himself.
We agree, however, with the minority of the court of appeal that the evidence, taken as a whole, preponderately proves that Pittman and Dupree should reasonably have realized the risk of attack by Carney and Dixon if Moore was removed from the dormitory. Under this finding, the security officers should have taken reasonable safeguards (such as sending for Carney and Dixon or such as completing the move when they were not present in the dormitory), especially since they had been informed and knew that Carney and Dixon were armed.
We further agree with the dissenting opinion in the court of appeal that Benoit's conduct fell below the standard of care reasonably expected of security guards. He made no move, by shouting commands or otherwise, to slow or prevent the attack on Breauz, who was under his care. (Compare, for instance, the prompt action of Guillot in breaking up the fight, as well as the testimony of the other security guards as to what they would have done under similar circumstances.)
By holding that the conduct of Benoit, Dupree, and Pittman fell below the standard *484 of care reasonably to be expected of custodial personnel under similar circumstances, we do not mean to be critical of them personally. Similarly, an automobile driver may be held negligent for misjudgment or momentary lapse, without the least moral blame or serious professional defect being attached because of a brief episode of actionable conduct.
Further, though their conduct constitutes legal fault for which the State as their employer is responsible, the blame is not so much personal as due to the undermanned and harassed conditions in which these employees must perform their most important duties.
We note that both the trial and the intermediate courts accepted the virtually uncontradicted evidence that, due to budgetary limitations, the penitentiary does not maintain an adequate number of guards to provide reasonable security for the dormitory inmates. Although the views above expressed find no need to rest liability upon this basis (as did the majority of the court of appeal), this milieu does much to explain the inability of the present security personnel to have devised and afforded reasonable security to Breaux and Moore to avert harm that they should reasonably have anticipated when the unarmed Breaux and Moore were permitted to confront the armed Carney and Dixon.
Contributory Negligence or Assumption of the Risk by Breaux
In the alternative, the State suggests that Breaux's activities on behalf of Moore were a contributory cause of his death barring recovery therefor. The State, in one breath claiming it is powerless to prevent homosexual attack upon young inmates, now in another breath claims that an older inmate attempting to perform this function (due to the default of the State) was contributorily negligent for so doing.
Contributory negligence is conduct which amounts to a breach of a duty to protect one's self, conduct that falls below a societal standard. Prosser, Law of Torts, Section 65 (4th ed., 1971); see Sloan v. Flack, 150 So.2d 646 (La.App.3d Cir. 1963). The decedent Breaux's conduct is clearly not of such nature. Nor can Breaux's entering the dormitory under "protection" of a prison guard be regarded as an appreciated (subjective) assumption of a known risk such as would bar recovery. Prosser at Section 68.

Decree
We therefore affirm the judgment of the court of appeal holding the State liable.[1]
Court of Appeal decree affirmed.
SANDERS, C. J., and SUMMERS and MARCUS, JJ., dissent and assign reasons.
MARCUS, Justice (dissenting).
The majority correctly points out that both the trial court and a majority of the court of appeal felt that the state was not liable under the test enunciated in Parker because, while the penitentiary guards may have had reasonable cause to anticipate harm to Moore, there was no evidence to prove that they knew of threats to harm Breaux. I agree with the findings of the courts below. Furthermore, the factual finding of the trial court should not be disturbed on review by an appellate court absent *485 manifest error. Canter v. Koehring, 283 So.2d 716 (La.1973). I find no such error here.
Accordingly, I respectfully dissent.
SANDERS, Chief Justice (dissenting).
The applicable rule as stated in Parker v. State, La., 282 So.2d 483 (1973) is as follows:
"A penal institution is not an insurer of an inmate against attacks by other inmates. The standard is that of reasonable or ordinary care. The majority rule is that in order to hold the penal authorities liable for an injury inflicted upon an inmate by another inmate, the authorities must know or have reason to anticipate that harm will ensue and fail to use reasonable care in preventing the harm."
Under this rule, the lower courts found no negligence on the part of the prison employees.
The trial judge stated:
"In summary, we find that the prison authorities in the instant matter did not know or have reason to anticipate on August 11, 1973, that harm would ensue to Breaux on that date."
The Court of Appeal concurred:
"The majority finds these employees had no reason to expect that Breaux was in danger of harm because it was Moore, not Breaux, who had been threatened by Carney and Dixon. The majority are of the further view that Benoit was not negligent in failing to take any action to stop the armed attack upon Moore and Breaux before the assault began." (Breaux v. State, La.App., 314 So.2d 449 at 457.)
The majority finds that the correctional officers were negligent in failing to anticipate the attack on Breaux and to take precautions against an attack. The majority also finds negligence on the part of Officer Benoit in not "shouting commands or otherwise" when the two prisoners attacked Breaux with knives.
I agree with the two lower courts that the correctional officers had no reason to anticipate an attack on Breaux. Prior to the fatal encounter, he had not been threatened in any way.
At the time of the encounter, Benoit was unarmed in compliance with prison rules. His group was suddenly attacked by two "hardened criminals" armed with knives. Benoit was confronted with a sudden emergency.
In Hickman v. Southern Pacific Transport Company, 262 La. 102, 262 So.2d 385 (1972), this Court stated the rule to apply in emergency situations as follows:
"One who suddenly finds himself in a position of imminent peril, without sufficient time to consider and weigh all the circumstances or best means that may be adopted to avoid an impending danger, is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to have been a better method, unless the emergency in which he finds himself is brought about by his own negligence."
See also Dane v. Canal Insurance Company, 240 La. 1038, 126 So.2d 355 (1960); Snodgrass v. Centanni, 229 La. 915, 87 So.2d 127 (1956); Callais v. Furniture Showrooms, Inc., La.App., 213 So.2d 537 (1968); 57 Am.Jur.2d, Negligence § 90, pp. 437-438; 65A C.J.S. Negligence § 123, p. 77; Prosser, Law of Torts, § 33, pp. 168-169 (4th ed. 1971).
In light of the emergency, I am not prepared to say that Benoit was negligent in immediately running to the door and calling for help, especially when he knew help was nearby. Nor, in the light of the emergency, am I prepared to say that the two correctional officers were negligent in handling the tragic episode after the second officer arrived. The officers' actions *486 cannot be tested by a standard based upon calm reflection in the safety of judicial chambers.
For the reasons assigned, I respectfully dissent.
SUMMERS, Justice (dissenting).
I dissent for the reasons assigned by the Chief Justice and Mr. Justice Marcus.
NOTES
[1] Since the plaintiffs did not apply for review, the dismissal against Benoit, Dupree and Pittman individually is final; a decree cannot be amended to the benefit of parties who failed to apply for writs. Jordan v. Travelers Insurance Co., 257 La. 995, 245 So.2d 151 (1971). Nevertheless, as Jordan indicates, this court may affirm the decree on grounds of decision rejected by the intermediate court, despite the failure to apply for writs. The theory-of-the-case doctrine does not apply in appellate review in Louisiana, and the appellate court has authority to render any judgment proper on the record before it. La.C.Civ.P. art. 2164.