HALL, Judge.
This action arises out of an almost head-on, two-car collision in which plaintiff received severe injuries resulting in paraplegia. Plaintiff, driver of one of the automobiles, appeals from a judgment of the district court rejecting his demands for damages against the other driver, her husband, and her liability insurance company. For the reasons expressed in this opinion, we affirm the judgment of the district court.
Plaintiff is Alfred Driggers, Jr., a 32 year old ironworker at the time of the accident. Defendants are Lucille Prisco Thrash, a 47 year old mother of three, her husband Terrah O. Thrash, and Southern Farm Bureau Casualty Insurance Company.
The accident happened on August 5, 1969, at 4:15 p. m. on Louisiana State Highway 154 approximately 2.8 miles west of Ringgold in Bienville Parish. Louisiana Highway 154 runs generally east and west, is a two-lane asphalt highway approximately 22 feet in width, and has a painted center line. The area of impact was at a relatively straight and level point at the bottom of two hills, one rising to the east and one to the west. The weather was clear, dry and hot.
Immediately prior to the accident, plaintiff was driving his 1969 two-door Volkswagen sedan in an easterly direction on the way to his home in Ringgold from Shreveport where his automobile had been serviced. Defendant, Mrs. Thrash, was driving her 1965 Buick sedan in a westerly direction on the way from her home to pick peas at a friend’s pea patch in the area. There was no other traffic in the immediate vicinity. The only witnesses to the accident were plaintiff and defendant.
Plaintiff’s and defendant’s versions of how the accident happened are in sharp conflict. Plaintiff testified he topped the hill at a speed of approximately 60 m. p. h., the existing speed limit at the time. He saw the Buick with at least its front end in and blocking his lane of travel as if making a u-turn maneuver. He lightly applied his brakes in an effort to stop and continued down his eastbound lane, but was unable to stop and struck the Buick in his lane of travel.
Defendant testified she was traveling westerly when she saw the Volkswagen come over the hill in her lane of travel. The Volkswagen came down the hill at a rapid rate of speed on her side of the road, getting off onto or partially onto the north shoulder. She slowed down, pulled over as close as she could get to the center line, stopped, closed her eyes and began to pray. The Volkswagen collided with her Buick in her lane of travel. She did not see the actual impact.
The great preponderance of the physical evidence as described by several witnesses who arrived at the scene shortly after the accident and as evidenced by photographs in the record strongly supports defendant’s version of the accident.
Among the first persons to arrive at the scene of the accident were Ernest D. Hig-ginbotham, Chief of Police of Ringgold, George Henry Sherman, Jr., a Methodist minister who formerly worked as an insurance adjuster, and Clayton Pullig, a highway department truck driver. Trooper First Class Dick Thomas of the Louisiana State Police investigated the accident.
These witnesses established that after the collision the Thrash Buick was headed in a westerly direction, with the front end of the car all or partially across the center *720 line at an angle and the remainder of the car in the westbound lane. The Driggers Volkswagen was in the ditch on the north side of the road against a sweetgum tree, approximately 63 feet north and east of the apparent area of impact.
It was established that plaintiff was thrown out of his automobile and came to rest on the pavement in the westbound lane to the right or north of the Buick.
The trooper and the other witnesses observed dirt and debris to the right or north of the Buick in the westbound lane. There were gouge marks in the asphalt pavement under the front end of the Buick near the center line of the highway, and pieces of asphalt on a part of the underside at the right front of the Buick which had dropped down after impact. The gouge marks ran from right or north of the center line to slightly left or south of the center line. There was a white line made by battery acid which spilled from the Buick’s battery, located at the right front of the car, extending from the right side of the westbound lane over to near the center line.
Damage to the Volkswagen was to the left front and damage to the Buick was to the right front.
The trooper testified he observed and measured 68 feet of skid marks made by the Volkswagen in the westbound lane leading to the point of impact. He established the point of impact as being in the westbound lane of travel.
The trooper testified there was so much traffic around the scene by the time he got there he could not locate or identify tire tracks or marks on the shoulder of the road. The other witne. ¿es, however, looked carefully and observed distinct, fresh tire tracks made by a small car on the north shoulder, extending to a point near the area of impact, at which point the tracks led back into the westbound lane of travel. At least two of the witnesses observed tire tracks on the sticky or “bleeding” asphalt near the top of the hill crossing the westbound lane and going onto the shoulder and then leading easterly down the hill to the area of impact as described above. The witnesses observed a culvert sign on the north side of the highway west of the area of impact which had been knocked down.
As would be expected, there were some discrepancies and inconsistencies in the testimony of the witnesses who observed the scene. For example, the trooper did not see the gouge marks, which were seen by other witnesses and were later photographed and examined by expert witnesses. Also, the trooper reported the Buick traveled 27 feet westerly and northerly after the impact, which would be impossible under any conceivable version of how the accident occurred. Nevertheless, the testimony of the witnesses is generally consistent, providing information about the physical evidence which, in turn, paints a fairly clear picture of how the accident happened —consistent in general with Mrs. Thrash’s version.
Two well-qualified accident reconstruction experts testified — one for plaintiff and one for defendants. Plaintiff’s witness, Ray Herd, Director of the Northwest Louisiana Criminology Laboratory, made one visit to the scene of the accident, examined photographs of the vehicles, and listened to the testimony of some of the witnesses at trial. Herd analyzed the angle of the force applied to each vehicle when they collided as revealed by the damages shown by the photographs. He was of the opinion it would have been difficult or impossible for the Volkswagen, traveling at a rapid rate of speed on the north shoulder, to have returned to the westbound lane of travel and to have struck the Buick in the manner and at the angle indicated by the damage to the vehicles. He was of the opinion the damage to the vehicles was consistent with plaintiff’s version of the accident. Beyond these opinions, Herd *721 never was asked nor did he express any definite conclusions as to how the accident happened. His investigation was rather limited and his testimony was basically limited to an analysis of the damage to the vehicles and the angle of force applied to them at impact.
Defendant’s witness, Dr. William Tonn, an engineer from Houston, made a more thorough investigation of the scene of the accident, making tests, measurements, and the like. He correlated all available information, including testimony of the witnesses at trial. His opinion was that the accident happened much as described by Mrs. Thrash. As the Driggers Volkswagen came over the hill it drifted into the left or westbound lane, got off on the shoulder, proceeded down the hill at a rapid rate of speed, and came back onto the highway partially out of control, moving in a “crabbing” manner. The left front of the Volkswagen struck the right front of the Buick, which was stopped or almost stopped in the westbound lane.
Dr. Tonn’s reconstruction of the accident is persuasive and is consistent with the independent evaluation of the evidence by this court and the district court. Virtually all of the factors mentioned in the review of the evidence above strongly support a finding that the collision took place in Mrs. Thrash’s westbound lane after the Driggers automobile traveled down the hill easterly in the westbound lane, on the north shoulder, and back onto the westbound lane.
In written reasons for judgment, the trial court found as a fact that Drig-gers, for some reason known only to him, drove his vehicle into the lane of travel occupied by the Thrash vehicle and, in some manner, the left front of the Driggers automobile struck the right front of the Thrash vehicle. The trial court concluded “[t]he Thrash vehicle was in its proper lane of travel at the time of the accident, or, if it were partially into the other lane of travel, it was there because the Drig-gers’ vehicle was approaching in the Thrash lane of travel or was knocked into the Driggers’ lane by the collision itself.” Our review leads us to the conclusion the trial court’s findings are eminently correct.
Plaintiff’s primary contention on appeal is that the accident happened as described by plaintiff and that Mrs. Thrash was negligent in attempting a left turn or u-turn into plaintiff’s lane of travel on the highway. Plaintiff argues that the collision took place in Driggers’ lane of travel, creating a presumption of negligence on the part of defendant. Our finding of fact, to the contrary, is that the collision took place in Mrs. Thrash’s proper westbound lane of travel. She did not attempt a u-turn or otherwise cross over into or block plaintiff’s eastbound lane of travel, except to a very small extent either immediately prior to impact or after impact.
The accident was not caused by any negligence on the part of defendant, but was caused by plaintiff’s own negligence in allowing his vehicle to proceed down the wrong or westbound lane and shoulder and failing to keep his vehicle under proper control.
Plaintiff next contends that any negligence on his part is excused under the sudden emergency doctrine, plaintiff being confronted with a sudden emergency when the Thrash vehicle crossed over into his lane of travel. As previously stated, our finding is that the Thrash vehicle did not cross over into plaintiff’s lane of travel. Plaintiff was not confronted with a sudden emergency except that created by his own negligence and is, therefore, not entitled to the protection of this doctrine. Dane v. Canal Insurance Company, 240 La. 1038, 126 So.2d 355 (1960) and Clayton W. Posey v. Commercial Union Insurance Company, 332 So.2d 909 (La.App. 2d Cir. 1976).
*722 Plaintiff argues alternatively that defendant had the last clear chance to avoid the accident, which she did not do, and is therefore liable. Plaintiff contends that when defendant observed plaintiff proceeding down the hill in her lane of travel and on the shoulder, she could have and should have taken evasive action to avoid the accident by driving to the left-hand side of the road.
It was defendant who was confronted with a sudden emergency created by the actions of plaintiff. Her failure to exercise perfect judgment under the circumstances is excusable. Furthermore, the action she took under the circumstances was reasonable. She slowed down and stopped or almost stopped. She drove left to or slightly across the center line, leaving the possibility open for plaintiff to continue on by her on the shoulder to her right or to return to his proper lane. She was entitled to presume, as a matter of law and as a matter of judgment, that the other vehicle would return to its proper lane of travel. Adams v. Dairyland County Mutual Insurance Company, 240 So.2d 762 (La.App. 2d Cir. 1970). There being no negligence shown on defendant’s part, the last clear chance doctrine is not applicable to the circumstances of this case and affords plaintiff no relief. Anders v. Eagle Motor Lines, incorporated, 292 So.2d 855 (La.App. 2d Cir. 1974) and Kemp v. Kennedy, 283 So.2d 773 (La.App. 1st Cir. 1973).
The accident and its serious consequences to plaintiff are tragic and unfortunate. The law provides redress, however, only for damages caused by the fault of another. The evidence in this case establishes that the defendant was not at fault and, consequently, neither defendant nor her liability insurance company are responsible for the plaintiff’s damages.
For the reasons assigned, the judgment of the district court is affirmed at plaintiff-appellant’s costs.
Affirmed.