BOUTALL, Judge.
This case arises from a nighttime collision on Louisiana Highway 3127 in St. Charles Parish involving injuries to occupants of both vehicles. From a judgment in favor of the plaintiff on the defendant’s reconventional demand, the defendant has appealed. We affirm.
On August 3, 1977, at about 7:00 p.m., a car driven by Ann Dubois collided with a van driven by Benny Louviere. Kirk Du-bois, Ann Dubois’ husband, was a passenger in the Dubois vehicle, while Louviere's co-workers, Harris Dufrene and Joseph En-dres, were passengers in his vehicle. Although the parties’ description of the impact vary as to its cause and its exact location, they agree that Dubois was driving west and that Louviere was driving east; that Louviere swerved into Dubois’ lane then began pulling back into his own; that Dubois moved to the right when she saw the lights from the van approaching, then moved left; and that a collision followed. Louviere alleges the impact took place in his lane, while Dubois insists that the cars collided in her lane. The state trooper who investigated at the scene reported that the vehicles were head to head in the area of the center line. There were no outside witnesses to the crash.
We shall not recite the lengthy chronology of this proceeding. The salient points are these: Ann Dubois and Kirk Dubois filed suit for their injuries on January 19, 1978 against Benny Louviere and Allstate Insurance Company, insurer of his vehicle, and in the alternative Milton Mongrue. *1277 Mongrue was named a defendant “in the event that this Honorable Court finds that there were cows on Louisiana Highway 3127 on the evening of the accident and that the actions of Benny B. Louviere were the result of the presence of the cows on the highway, and that Benny B. Louvi-ere was not negligent, then the plaintiffs assert that any cows, which were located on the highway, were owned by Milton Mongrue, and that Milton Mongrue was negligent for allowing the cows to wander onto the highway, at night, and is furthermore held to strict liability under Article 2321 of the Louisiana Civil Code.” Louvi-ere reconvened against the Dubois and later filed an “Amended Answer, Reconven-tional and Third Party Demands,” in which Joe Endres and Harris Dufrene asserted claims against the Dubois. Endres and Dufrene had not made claims against Allstate or the plaintiffs before, and the judge apparently handled their claim as an intervention.
There were many motions and exceptions over the ensuing months, during which time Ann and Kirk Dubois settled their damage claims against Allstate and Milton Mongrue was dismissed from the suit. When the suit finally came to trial on February 23, 1983, the matters before the court were the reconventional demand of Louviere and third party demands of En-dres and Dufrene against the Dubois and their insurer, General Accident Insurance Company, and the Dubois’s third party demand for indemnification against Allstate and Louviere if cast in judgment for the damages of Endres and Dufrene.
The trial judge rendered judgment on August 11, 1983 and held as follows: Ann Dubois was not negligent and all demands against the Dubois and General Accident Insurance Company were dismissed; Benny Louviere was negligent and his negligence was the sole proximate cause of the accident; Allstate was cast for the damages, plus costs and expenses, of Joe En-dres and Harris Dufrene. Upon a motion and amended motion for new trial by Lou-viere, Endres, and Dufrene and a motion for new trial and/or amended judgment by Allstate, the trial judge again rendered judgment on November 15, 1983, denying Louviere, Endres, and Dufrene’s motion, voiding the portion of his original judgment which cast Allstate for damages, and dismissing the demands of Louviere, Endres, and Dufrene. From that judgment Louvi-ere, Endres, and Dufrene have taken a devolutive appeal.
The issues before this court are whether the trial judge correctly applied the law, specifically the “assured clear distance” and “sudden emergency” rules, to the facts at hand; whether he was incorrect in denying the motion for new trial, based on newly discovered evidence; whether Du-bois and Louviere were jointly negligent; and whether the assessment of costs against Louviere, Endres, and Dufrene was proper.
We first consider the issue of the denial of a new trial. La.C.C.P. art. 1972 provides that:
“A new trial shall be granted, upon contradictory motion of any party, in the following cases:
“(1) Where the judgment appears clearly contrary to the law and the evidence;
“(2) Where the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial; or
“(3) In jury cases, as provided in Article 1814.”
Louviere had alleged that he was confronted by a group of cows crossing the road ahead of him, that he swerved into Dubois’ lane briefly to avoid a cow and in fact grazed one with the side of his car. At trial Louviere, Endres, and Dufrene all testified that they saw cows. Eric Durel, a state trooper investigating the accident, testified that he arrived at the scene about an hour after the accident and saw no cattle then. He returned the next day to look for cows and saw none. Ann Dubois and Kirk Dubois both said they saw no cows, as did Remi Vicknair, Ann Dubois’ father, who came to the scene shortly after the accident.
*1278 Louviere’s motion for a new trial alleged that newly discovered evidence, previously unavailable, had appeared in the form of one man who arrived on the accident scene soon after the collision and remembered that cows were in the area and another man, a former police officer who assisted in the state trooper’s investigation of the accident, who remembered there were cow hairs on the right side of Louviere’s van. Attached to the motion was an affidavit by Benny Louviere swearing that everything in the motion was true. The trial judge stated in his reasons for judgment in both judgments that he did not believe there were cows on the road.
Although the judge did not so state, the “newly discovered evidence” failed to meet not only the requirement of importance to the case but that of due diligence in seeking evidence. Louviere was defended by Allstate as early as February 14, 1978 and by his own counsel as of March 22, 1978 and trial was not held until February 23, 1983, Louviere had ample opportunity for discovery. See Barker v. Rust Engineering Co., 428 So.2d 391 (La.1983). Accordingly, we find that the trial judge was correct in denying the appellants’ motion for a new trial.
We next consider the issue of the court’s application of the law. The appellants urge that the trial judge’s interpretation of the “assured clear distance” rule is incorrect. In his reasons for judgment in the first judgment the judge explained that even if there were cows, Louviere would have been at fault. He said:
“... Louviere testified he was travel-ling at 55 m/p/h on a dark, straight road when he saw cows on the road some 30 to 40 feet ahead. R.S. 32:321 provides that motor vehicle head lamps must on the uppermost distribution of light reveal persons or vehicles at least 500 feet ahead and must on the lowermost distribution of light reveal persons or vehicles at least 150 feet ahead. Louisiana law says it is the duty of a driver to operate his vehicle in such manner that it can be stopped within range of vision illuminated by the headlights. His failure to maintain a proper look-out and to maintain his vehicle under proper control caused the emergency situation and this emergency placed the Dubois in imminent peril.”
The appellant is correct in pointing out that the “range of vision” or “assured clear distance” rule has been relaxed. In the case of Craker v. Allstate Insurance Company, 250 So.2d 746 (La.1971), the court said, at 749:
“The old rule literally applied is no longer a practical or fair regulation for the nighttime speed of modern drivers of modern cars on our highways. Consequently the rule has been modified to incorporate this realization and to exact a standard of care of the nighttime driver based upon the broad requirement of reasonableness, a formula of negligence where there are few absolute rules and one requiring a careful consideration of all circumstances surrounding each case.”
Regardless of the relaxation of the “assured clear distance” rule, without proof of the presence of cows on the road Louvi-ere’s argument falls. See also Vowell v. Manufacturers Casualty Ins. Co., 229 La. 798, 86 So.2d 909 (1956); Hryhorchuk v. Smith, 379 So.2d 281 (La.App. 3rd Cir.1979), 390 So.2d 497 (La.1980).
The appellant complains further that the judge incorrectly applied the “sudden emergency” rule in favor of Ann Du-bois. The doctrine is stated in Hickman v. Southern Pacific Transport Company, 262 La. 102, 262 So.2d 385 (1972), as follows, at 389:
“One who suddenly finds himself in a position of imminent peril, without sufficient time to consider and weigh all the circumstances or best means that may be adopted to avoid an impending danger, is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to have been a better method, unless the emergency in which he finds himself is brought about by his own negligence....”
See also Stephens v. State Through Dept. of Transp., 440 So.2d 920, (La.App. 2nd *1279 Cir.1983). The appellant argues that the rule should have been applied to exonerate him rather than Ann Dubois, because the cows created a sudden emergency for him first. Louviere argues further that Ann Dubois had a wide shoulder on her side of the road, while there was a ditch next to his side. In the case of Dane v. Canal Insurance Co., 240 La. 1038, 126 So.2d 355 (1960) cited in Hickman v. Southern Pacific Transport Company, supra, a collision resulted when a taxi driver was suddenly confronted by a car that was zigzagging across the highway and swerved to the opposite lane rather than the shoulder of the highway. The court said that the driver was not required to exercise the same judgment as one who had more time. In view of the sudden emergency doctrine, it was immaterial that the driver steered his car across the center lane in attempting to avoid the collision. As noted above, the trial judge in our case disbelieved Louvi-ere’s cow story and found that he had caused the emergency by failing to maintain proper lookout and keep control of his vehicle. Faced with the emergency, Ann Dubois could not be held negligent for failing to make a better choice of ways to avoid the accident.
Louviere, Endres, and Dufrene all testified at trial that the vehicles collided in Louviere’s lane. All three had been interviewed a few days after the accident and the transcripts of the taped interviews were introduced on proffer, subject to the court’s hearing the tapes with all counsel present, which hearing took place after trial on April 28, 1983. On March 16, 1977, four days post accident, when asked whether the impact was in his lane or the opposite lane, Louviere said, “Uh, the only thing I know is what the State Trooper told me that we were both on the center line,” and stated that both vehicles stopped on impact. Louviere testified that he did not recall making the statement. Also on March 16, 1977, Harris Dufrene stated in his interview that they were “just about back in the right-hand lane” and that the impact was near the center of the highway. At trial he did not deny having made the statement but said he did not recall it. On March 14, 1977 Joe Endres said: "... I don’t know who was in who’s lane or what, but the only thing I can remember for a few minutes is that we both hit head on.” He did not recall having made this statement. State Trooper Eric Durel testified that when he arrived' on the scene, all the occupants of the vehicles had been taken to the hospital and he assumed that the vehicles had not been moved. Durel had little independent recollection of the scene but testified from his report. The accident narrative stated, “Both vehicles met head on in the area of the dividing line.” His diagram of the position of the cars indicated that the Louviere van was only partially in the Dubois’s lane and that almost all the Du-bois car was in the Louviere lane. He said that the drawing was a rough approximation of the scene and agreed it could be “a little one way or the other.” Upon questioning by the court, he stated he did not remember looking for oil spills, broken glass, etc. to pinpoint the actual site of the wreck.
Ann Dubois testified that she was in her own lane, along the center line, when the vehicles hit. Kirk Dubois testified that their car moved to the left about two feet on impact, but the accident happened in the west lane. After “taking a pound” the Dubois car landed on the center line with the left front fender across the line, while the van was entirely in the Dubois’ lane. Remi Vicknair, Ann Dubois’ father, testified that the Dubois car was not over the center line and was in the proper lane.
The issue of Ann Dubois’ being negligent or not hinges entirely on an evaluation of the facts. As the trial judge believed the Dubois witnesses rather than Louviere’s and the record supports his belief, we have no reason to overturn his finding. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
As to the issue of costs, the Louvi-ere litigants argue that it is unfair to assess all costs against three individuals alone when there were two insurance companies in the suit and the Dubois had been plaintiffs initially; as each party contribut *1280 ed to dragging out the case, each should contribute to the costs. The appellees contend that Dufrene and Endres chose not to make claim against Louviere’s insurer and forced the matter to be litigated. La.C. C.P. art. 1920 provides that ordinarily costs shall be paid by the party cast but that the court “may render judgment for costs, or any part thereof, against any party, as it may consider equitable.” The statute has been construed as giving much discretion to the trial judge in assessing costs. Stevens v. Allstate Ins. Co., 428 So.2d 834 (La.App. 5th Cir.1983); Bowman v. New Orleans Public Service, Inc., 410 So.2d 270 (La.App. 4th Cir.1982); Green v. Orleans Parish School Bd., 365 So.2d 834 (La.App. 4th Cir.1978), writ denied 367 So.2d 393 (La.1979). We see no abuse of discretion in this case.
For the reasons stated above, the judgment appealed from is affirmed at the cost of appellants.
AFFIRMED.