GUIDRY, Judge.
Defendant, State Farm Mutual Automobile Insurance Company (hereafter State Farm), appeals a judgment of the trial court awarding plaintiff damages in the amount of $7,447.24. State Farm was cast in judgment as plaintiffs UM carrier. Plaintiff, Carrie C. Pourteau, answered State Farm’s appeal seeking an increase in the award to $10,000.00, State Farm’s policy limits.[1]
This case arises out of a head-on collision which occurred at approximately 7:00 a.m., December 19, 1985 on Allen Parish Road # 14, also known as “Cloud Road”. Plaintiff, Mrs. Pourteau, was driving south on “Cloud Road” when her automobile struck a large pothole causing it to veer into the northbound lane into the path of an oncoming automobile operated by Charles A. Landon, an uninsured motorist. Landon was named as a cross-defendant by State Farm.[2]
The trial court found Landon to be 5% at fault based upon the “laws of physics”; the physical evidence at the scene of the accident as determined and testified to by the State Trooper, Harold Brady; the court’s opinion that Landon was driving at an excessive speed; and, because Landon, if attentive, should have had adequate time to take evasive action.
On appeal, State Farm argues that plaintiff failed to prove any causative fault on the part of Landon and that the trial court erred in concluding otherwise.
We find the trial court’s conclusions to be completely unsupported by the record and, therefore, clearly wrong. Accordingly, we reverse.
The trial judge correctly determined that most of the lay testimony in the record is vague, hopelessly in conflict and in most instances inconsistent. The following facts gleaned from the record are without dispute. “Cloud Road” is a narrow (approximately 20 feet wide) blacktopped road which runs generally north and south. The roadway is unlined and in a state of disrepair. The pothole which is the focal point of this accident is approximately six feet long, five feet wide and four inches deep. The condition of “Cloud Road” was well known to both drivers. The pothole in question is located between two hills which are approximately one-fourth (¼) mile apart. The roadway between the two hills is straight. The point of impact was approximately six feet west of the eastern edge of the roadway (4 feet into the northbound lane) and approximately 15 feet south of the pothole. The Pourteau vehicle was pushed backwards and came to rest crossways in the roadway about 21 feet north of the point of impact. The Landon vehicle traveled about 14 feet after impact coming to rest in a ditch on the east side of the roadway. The speed limit on “Cloud Road” is 45 miles per hour.
Plaintiff, who was alone in her vehicle, testified that she was proceeding in a southerly direction, between 40 and 45 miles per hour, and first observed the Landon vehicle when she was atop the northern hill and Landon was atop the southern *330 hill. She stated that for some reason she failed to see the pothole that morning and upon hitting the hole, her car was thrown into the northbound lane. Plaintiff insisted that although her ear was thrown into the opposite lane, she never lost control but brought her car to a stop and was in the process of returning to her lane of travel when struck by defendant.[3]
Landon testified that he was also traveling between 40 and 45 miles per hour; he first saw plaintiffs car when they were atop their respective hills; and, that he next remembered seeing plaintiff’s car approximately four car lengths away. At that time, Landon stated Ms. Pourteau’s ear was in its proper lane of travel. As a result of the injuries which he sustained, Landon remembered nothing more.
Arthur Buxton, a guest passenger in the Landon vehicle, testified that he first noticed plaintiffs vehicle when the cars were on their respective hilltops. Buxton estimated the speed of the Landon vehicle at between 40 and 50 miles per hour. Buxton stated that immediately prior to the accident he saw plaintiffs headlights raise up (what he described as a flash of light). Buxton stated that the Pourteau vehicle veered to the right immediately before it hit the hole and bounced across the center line.
None of the witnesses could agree on several key distances or times, i.e., the distance of the hole from each vehicle when the vehicles were atop their respective hills; the distance between the two cars when Ms. Pourteau hit the pothole; the span of time between plaintiff hitting the pothole and the collision. However, as to the latter, it seems plausible, considering plaintiffs deposition testimony and the point of impact (approximately 15 feet south of the pothole), that the collision occurred within a second of plaintiffs traveling through the pothole.
We have considered this record in light of the well established rules of appellate review and the following pertinent legal principles.
A motorist proceeding in his proper lane of travel is entitled to presume that an oncoming vehicle will remain in its proper lane of travel. Driggers v. Southern Farm Bureau Casualty Insurance Company, 335 So.2d 718 (La.App. 2d Cir.1976), writ denied, 338 So.2d 301 (La.1976); Adams v. Dairyland County Mutual Insurance Company, 240 So.2d 762 (La.App. 2d Cir.1970). The duty of a motorist, who is traveling in his proper lane of travel, to stop or take other precautions to avoid a collision with a vehicle approaching from the opposite direction on the wrong side of the road arises only when by due care he discovers that the opposing vehicle will not turn off and clear his way. Martin v. Fireman’s Insurance Co. of Newark, N.J., 132 So.2d 892 (La.1961); Driggers v. Southern Farm Bureau Casualty Insurance Company, supra. When a collision occurs between two vehicles, one of which is in the wrong lane of travel, there is a presumption that the driver in the wrong lane is negligent. Bishop v. Shelter Insurance Company, 461 So.2d 1170 (La.App. 3rd Cir.1984), writ denied, 465 So.2d 737 (La.1985), reconsideration denied, 467 So.2d 1125 (La.1985). Finally, if a motorist finds himself in a position of peril, not of his own making, and without sufficient time to consider the best means of avoiding the danger, he is not guilty of negligence if he fails to follow what subsequently may appear to have been a safer course of conduct. Bishop, supra.
In Starks v. Kelly, 435 So.2d 552 (La.App. 1st Cir.1983), our brethren of the First Circuit stated:
“Negligence is not presumed, and the burden of proving negligence by a preponderance of the evidence rests upon the party alleging it. Blanchard v. Sotile, 394 So.2d 633 (La.App. 1st Cir.1980), writ denied 399 So.2d 601 (La.1981). A preponderance of the evidence means evidence of greater weight or evidence *331 which is more convincing than that offered in opposition to it. Landry v. Madere, 396 So.2d 383 (La.App. 1st Cir.1981), writ denied 399 So.2d 611 (La.1981)....”
See also Henry v. State, Department of Health and Human Resources, 482 So.2d 962 (La.App. 3rd Cir.1986).
As a panel of this court explained in Derouen v. State Farm Mutual Automobile Insurance Company, 445 So.2d 139 (La.App. 3rd Cir.1984):
“It is fundamental law that a plaintiff bears the burden of proving his case. Ashford v. Richards, 228 So.2d 530 (La.App. 1st Cir.1969). Further, negligence must be established with reasonable certainty and by a preponderance of the evidence: The showing of a near possibility or probability of negligence is insufficient. Mayes v. McKeithen, 213 So.2d 340 (La.App. 1st Cir.1968), writ refused [252 La. 965] 215 So.2d 130 (La.1968)....”
In the case at bar no expert witness testified. No scientific evidence of any kind was offered. Therefore, it was clearly wrong for the trial judge to rely on the “laws of physics”. The state trooper who testified was not qualified as an expert in accident reconstruction. Therefore, he was only able to testify as to facts he observed at the accident scene. Neither his testimony nor the other testimony offered at trial proved by a preponderance of the evidence that Landon was speeding or in any way negligent. It was clear error for the trial court to conclude otherwise.
For the reasons stated, the judgment of the trial court is reversed and plaintiffs suit is dismissed, with prejudice, at her cost.
REVERSED AND RENDERED.

. We note that the $7,447.24 awarded plaintiff is mathematically incorrect. The trial judge, in written reasons for judgment, assessed plaintiffs total damages at $1,489,447.40 and the uninsured motorist’s percentage of fault at 5%. Thus, the uninsured motorist would be responsible for $74,472.37 of plaintiff's damages and State Farm should have been cast for its policy limits. Plaintiff did not make Landon, the other motorist, a party defendant.

. The trial court rendered judgment in favor of State Farm on its cross-claim against Landon. Landon did not appeal.