430 So.2d 1224 (1983)
Michael L. WALDEN
v.
STATE of Louisiana.
No. 82 CA 0628.
Court of Appeal of Louisiana, First Circuit.
April 5, 1983.
Writ Denied June 10, 1983.
Robert D. Downing, Baton Rouge, for plaintiff-appellant Michael L. Walden.
Joseph Erwin Kopsa, Baton Rouge, for defendant-appellee State of La.
Before LOTTINGER, COLE and CARTER, JJ.
COLE, Judge.
This is a tort action brought by a prisoner at Angola State Prison for personal injuries he received in a fight with another prisoner. The sole issue is whether or not the conduct of the guards, which was in violation of prison policy and for which they were disciplined, amounted to actionable negligence for which the State should be held responsible.
After plaintiff filed suit against the State, through the Department of Corrections, a hearing was held before Commissioner Norbert C. Rayford. The factual findings of Commissioner Rayford have not *1225 been disputed. Commissioner Rayford summarized the facts in evidence as follows.
"The plaintiff, Michael Walden, an inmate at Louisiana State Penitentiary, was stabbed by another inmate named Herbert Nicholson on August 18, 1976. The plaintiff received stab wounds in his chest and left shoulder. Although there is much conflict in the testimony regarding the circumstances which prompted the stabbing, it appears that the incident started over an alleged gambling debt (Tr. p. 7). Mr. Walden testified that he was housed in Cell 13 of the Cellblock (Tr. pp. 8,13) and that when he was out on his shower hour, Mr. Nicholson, the inmate in Cell 4, called him over and asked him to tell a `free man' that he wanted to go to the hospital; that when Walden was on his way back to his cell after requesting Nicholson's release and told him that he (Walden) owed him some money (Tr. pp. 7, 22) and that he (Nicholson) was going to kill him. Walden testified that he told Nicholson that he did not owe any money and that it was probably Nicholson's mistake that in fact perhaps Walden's cellmate owed Nicholson some money. Walden further testified that he did not pay much attention to the threat because he assumed the guards were either going to handcuff Nicholson or put him (Walden) back in his cell because that was the posted policy. (Tr. pp. 7, 10). When Nicholson was let out of his cell he immediately jumped Walden and stabbed him with a piece of glass from a Vaseline jar. Mr. Walden's testimony varied somewhat at this point because he now alleges that he was on his way to shower down near Cell 1 (Tr. pp. 8, 23) and that he was in his underwear at the time of the incident. The guard testified that Walden was fully clothed at the time but nevertheless the guard, Mr. Crayton, did not handcuff Nicholson nor did he put Walden back in his cell. (Tr. p. 8) When Nicholson was allowed to come free from his cell he immediately went after Walden and they struggled for a little while until Walden was on top of Nicholson in front or near the shower (Tr. p. 25). Walden testified that he looked up and saw a fork in the shower bars which had been there on previous occasions to stop the shower from running. (Tr. pp. 10, 26, 46) Walden stated that he grabbed the fork and stabbed at Nicholson but doesn't know if he made contact on Nicholson's body or not. (Tr. pp. 8, 26, 37, 38) Walden also indicated that there was a rule against glass being on the cellblocks (Tr. p. 9). Walden went on to say that he did receive medical treatment for his injuries but that he was in severe pain and even at the time of the hearing experienced constant pain from his injuries. (Tr. pp. 14, 15).
"Inmate Nicholson testified that he and Mr. Walden had an argument but that he never threatened Mr. Walden (Tr. pp. 87, 91). Nicholson further testified that Walden told him that he was going to pay the debt but that there was still going to be a fight and he (Nicholson), said that it was alright with him (Tr. pp. 87, 88). Nicholson stated that he and Walden had engaged in some form of gambling, (Tr. p. 99), and before he was let out of his cell he obtained a piece of glass from a broken Vaseline jar to protect himself (Tr. p. 91). Nicholson testified that when he was let out of his cell he saw Walden coming toward him with a fork or something in his hand (Tr. pp. 92, 102), and that Walden attacked him first and that is when he stabbed Walden with a piece of glass (Tr. pp. 92, 93). Nicholson also testified that Walden was fully dressed when he came toward him which was coming back toward the shower (Tr. p. 105). Nicholson also stated that he had asked Walden to tell a `free man' that he (Nicholson) wanted to go to the hospital, but that he never got to the hospital (Tr. pp. 88, 98, 103). He stated that he had never seen a fork in the bars of the shower stall for use in shutting off the shower before. He did, however, remember that they sometimes used spoons, forks, etc. to jam the shower to turn it off (Tr. pp. 95, 97). Nicholson further indicated that the guard did not come to *1226 his cell to open the door but opened it from the panel outside the gate and that he (Nicholson) and Walden were already fighting by the time the guard got to them (Tr. pp. 100, 101). According to Nicholson the two (2) met somewhere around Cell 2 or 3 and that he was backing up towards the shower room (Tr. pp. 92, 102).
"Inmate Louis Bellard, who was housed in Cell 3 at the time of the stabbing incident, testified that the fight occurred in front of his cell and that the participants struggled towards the shower room which was toward the front of the cellblock. He stated that he had observed and occasionally used a fork in the shower on prior occasions to turn the shower to the off position (Tr. pp. 55, 56, 58). Bellard stated that Nicholson, upon being let out of his cell walked straight to Walden and stabbed him, (Tr. p. 57), and that it was after that that the two (2) parties struggled with each other. According to Bellard, Walden did not go after Nicholson (Tr. pp. 57, 67).
"The guard on duty, a Mr. Crayton, testified that he observed the shower moments before the fight occurred and that he saw no fork and, in fact, had never seen a fork in the shower (Tr. pp. 108, 109). He stated that he had been at Angola for approximately one and onehalf months prior to the incident and he was not altogether familiar with the memorandum concerning allowing two (2) prisoners out of their cells at the same time. He indicated that the general practice, however, when removing a prisoner when another inmate was on the teer was that they would either lock up the other inmate or handcuff the one being removed. On this occasion, the two (2) inmates were fighting before he had an opportunity to handcuff Nicholson. Mr. Crayton testified that when he opened the cell door to Nicholson's cell from outside the gate he (Nicholson) and Walden immediately started after each other and that the two (2) fell in front of Cell 4 when he saw Mr. Walden with the fork and that Nicholson had something in his hand behind his back when they approached each other. He indicated that Walden was fully dressed and never actually reached the shower when the incident occurred (Tr. pp. 107,109). Crayton stated that his superior, one Ricky Martin, did not tell him to lock Walden up only to get Nicholson out so that he could go to the hospital (Tr. p. 112) and because the fight occurred he was reprimanded officially and suspended for a few days for failure to follow procedure. Finally, Mr. Crayton testified that glass objects were not allowed on the cellblocks and that they customarily had a shake-down twice a week on the cellblock (Tr. pp. 111, 113, 114). There is no question but that Ricky Martin and H.C. Crayton were reprimanded because they allowed two (2) inmates out of their cells at the same time in violation of posted policies. The policy was expressed in a memorandum to all personnel dated January 20, 1975 signed by R.H. Butler, Associate Warden at Angola Penitentiary. The memorandum and the letters of reprimand were made a part of the record and are enclosed in the evidence envelope."
Commissioner Rayford's report also noted that plaintiff testified he did not take Nicholson's threat seriously, so he did not report it to the authorities. In spite of the clear policy violation by the guards, the Commissioner concluded the State did not breach its duty of care towards plaintiff, since "there is no evidence that the institution knew or should have known based upon any information given to them that some animosity existed between Inmate Walden and Inmate Nicholson."
Plaintiff then filed a rule to traverse the Commissioner's recommendation. The matter was then heard before the Nineteenth Judicial District Court, which agreed with the Commissioner and dismissed the case. Plaintiff has taken a devolutive appeal.
On appeal, plaintiff contends the trial court erred in applying the standard of care enunciated by Parker v. State, 282 So.2d 483 (La.1973), cert. denied, 414 U.S. 1093, 94 S.Ct. 724, 38 L.Ed.2d 550 (1973), and its *1227 progeny to a maximum security situation. Rather, plaintiff contends the proper standard of care was that required by the prison policy prohibiting the release of other prisoners from their cells while an inmate is out of his cell on his shower hour.
In Davis v. State, Through Dept. of Corrections, 356 So.2d 452 (La.App. 1st Cir. 1977), this Circuit addressed the question of what is the test of negligence to apply in a stabbing case which involves a maximum security area. The court concluded that Parker v. State, supra, sets forth the correct legal duty imposed upon penal authorities for the protection of inmates against attacks by other inmates. The Parker rule, often called the "bad blood" rule, was set forth as follows:
"A penal institution is not an insurer of an inmate against attacks by other inmates. The standard is that of reasonable or ordinary care. The majority rule is that in order to hold the penal authorities liable for an injury inflicted upon an inmate by another inmate, the authorities must know or have reason to anticipate that harm will ensue and fail to use reasonable care in preventing the harm." Parker v. State, 282 So.2d 483, 486 (La. 1973).
However, plaintiff contends the injury would not have occurred but for the failure of prison personnel to follow prison policy designed to protect inmates from the type of harm which occurred. Plaintiff further contends this policy was probably promulgated in response to the decision of the U.S. District Court for the Middle District of Louisiana in Hayes Williams v. McKeithen, an unreported case which allegedly mandated policies and procedures to improve prison safety in Louisiana state prisons.
In order for plaintiff to recover damages, it must be established that the conduct complained of constituted a breach of a legal duty imposed on the defendant to protect against the particular risk involved. Smolinski v. Taulli, 276 So.2d 286 (La.1973), on remand, 285 So.2d 577 (La.1973); Pierre v. Allstate Insurance Company, 257 La. 471, 242 So.2d 821 (1970); Neathery v. State, Etc., 395 So.2d 407 (La.App. 3d Cir.1981). Though the prison policy mandated a very specific standard of care for releasing prisoners from their cells, this was not a legal duty imposed by law.[1] We conclude the correct legal duty to be applied to maximum security areas, as well as in minimum and medium security areas, is the Parker standard of care.
Since the evidence establishes the guards had no reason to anticipate any hostility between plaintiff and Nicholson, the State did not violate its legal standard of care.
For the above reasons, the judgment of the district court is affirmed. Plaintiff is to bear the costs of the appeal.
AFFIRMED.
NOTES
[1] There was no evidence to show that the court order in the Hayes Williams case created such a duty. Even if the policy violation was a violation of the federal court order, this would not mean the guards were negligent per se. See McGee v. State Through Dept. of Corrections, 417 So.2d 416 (La.App. 1st Cir.1982).