# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 04-928

PEGGY HARRISON AND
RAYMOND HYMES

VERSUS

NATCHITOCHES PARISH SHERIFF'S DEPT., ET AL.

**************
APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NUMBER 72796-B
HONORABLE FRED SEXTON, JR., PRESIDING

**************
**SYLVIA R. COOKS**
**JUDGE**
**************

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and
Michael G. Sullivan, Judges.

**AFFIRMED.**

Donald G. Kelly
Kelly, Townsend & Thomas
P.O. Box 756
Natchitoches, Louisiana 71458-0756
(318) 352-2353
COUNSEL FOR PLAINTIFF/APPELLANT:
    Raymond Hymes

Laura J. Johnson
126 Touline Street
Natchitoches, Louisiana 71457
(318) 352-9125
COUNSEL FOR PLAINTIFF/APPELLANT:
    Peggy Harrison

L. Lane Roy
Dawn L. Morris
Preis, Kraft & Roy
P.O. Drawer 94-C
Lafayette, Louisiana 70509
(337) 237-6062
COUNSEL FOR DEFENDANT/APPELLEE:
      Natchitoches Parish Sheriff's Department
      Boyd B. Durr
      Victor Jones, Jr.

Ronald Corkern, Jr.
Corkern & Crews
P.O. Box 1036
Natchitoches, Louisiana 71457-1036
COUNSEL FOR DEFENDANT/APPELLEE:
      Natchitoches Parish Sheriff's Department
      Boyd B. Durr
      Victor Jones, Jr.

**COOKS, Judge.**

STATEMENT OF THE CASE

On October 9, 1999, Spencer Hymes, while incarcerated in the Natchitoches Parish Detention Center, was severely beaten by another inmate, Jerry "Lou" Johnson. Several months after this beating, Spencer Hymes died as a result of the injuries he sustained during the incident. Peggy Harrison and Raymond Hymes filed a wrongful death and survival action on behalf of their son, Spencer Hymes, against the Natchitoches Parish Sheriff's Department, Boyd B. Durr, the former Natchitoches Parish Sheriff, Victor Jones, the current Natchitoches Parish Sheriff, John Doe and Jerry "Lou" Johnson.

The facts indicate on the evening of October 8, 1999, Jerry Johnson was placed in lockdown for standing in front of a window in his underwear. When confronted, Johnson cursed the law enforcement officers. Backup was called for and Sgt. Williams and Officer Robinson escorted Johnson to lockdown. At approximately 2:15 a.m. Spencer Hymes was also sent to lockdown for being in an unauthorized area and for alleged aggravated disobedience. Hymes was placed in the cell with Johnson. While Hymes was sleeping, Johnson began to severely beat him about the head with his foot. Johnson stated: "[T]hat morning we started arguing with each other and then when he went to sleep my mind just clicked and I just woke up and started stumping him in the head. . . . I kept on stumping him and then he started spitting blood out the mouth. Then I beat on the door. I called for Ms. Joseph, told her he was having a seizure." Johnson eventually pled guilty to manslaughter.

The Plaintiffs allege Spencer Hymes' death was caused by the intentional acts of Johnson and by the negligence and recklessness of the Natchitoches Parish Sheriff's Department in failing to prevent the beating, failing to train employees to

3

prevent such beatings, failing to supervise, and failing to act reasonably under the circumstances. Plaintiffs contend the Natchitoches Parish Sheriff's Department had reasonable cause to anticipate Hymes would suffer harm because of the violent and volatile nature of Jerry Johnson; and it failed to use reasonable care to prevent the harm. The Defendants moved for Summary Judgment. The trial court granted Defendants' Motion for Summary Judgment and dismissed the Plaintiffs' petition. For the reasons assigned below, we affirm the decision of the trial court.

## LAW AND DISCUSSION

Two Louisiana Supreme Court cases, *Parker v. State*, 282 So.2d 483 (La.1983) and *Jackson v. Phelps*, 95-2294 (La. 4/8/96), 672 So.2d 665, discuss the applicable burden of proof to establish a penal institution is negligent in protecting inmates. In *Parker*, the plaintiff, George Parker, an inmate in the Louisiana State Penitentiary, was stabbed by Edmonson, another inmate, while in his bunk asleep. Edmonson had a history of violence during his prison stay. Prior to stabbing Parker, Edmonson was involved in three other incidents where he cut or struck another inmate using a weapon. Edmonson threatened Parker, and Parker stated he reported the threats to prison officials. The supreme court affirmed a dismissal of the complaint, stating:

> The applicable rule has been frequently stated. A penal institution is not an insurer of an inmate against attacks by other inmates. The standard is that of reasonable or ordinary care. The majority rule is that in order to hold the penal authorities liable for an injury inflicted upon an inmate by another inmate, *the authorities must know or have reason to anticipate that harm will ensue and fail to use reasonable care in preventing the harm.*
> The record in the present case supports a finding that the penal authorities received notice that the plaintiff feared an attack from Edmonson. Such a notice alone, however, is insufficient to support liability under the above rule. Scores of reports of this kind are received weekly in the prison environment. For liability, the law requires at least adequate reason to anticipate harm and failure to take reasonable action to avert it.

*Id.* at 486. (Emphasis added)(citations omitted).

4

Parker argued prison officials were negligent, once they knew of the threats, and failed to isolate him or place him in a facility apart from Edmonson. The supreme court found the "steps taken by the authorities which included a conference with the prisoners and a search for weapons, were reasonable under the circumstances." *Id.* at 487.

In *Jackson,* James Jackson, an inmate at Dixon Correctional Institute (DCI) sued to recover damages for injuries he received when another inmate, James Smith, cut his throat and stabbed him. Prior to the incident, Jackson did not disclose to prison officials that he feared being attacked by Smith. The Louisiana Supreme Court reversed a lower court finding of liability, stating:

> The record in this case clearly establishes that the penal authorities at DCI had no reasonable cause to anticipate harm to plaintiff. Smith's attack on Jackson came without warning to Jackson and prison officials. The warden testified that if he had known that Jackson and Smith were enemies, he would have kept them apart. The chief of security testified at trial that when a prisoner feels at risk from attack by another inmate, the prisoner can request to be placed in administrative lockdown.

*Id*. at 667.

A fellow inmate also testified he never witnessed any arguments between Jackson and Smith. Of significance to the supreme court was "that no one anticipated any difficulty between Jackson and Smith. The attack appeared to be spontaneous and unprovoked." *Id.*

In the present case, the Defendants argue the Plaintiffs cannot prove: (1) the employees of the Natchitoches Parish Detention Center had reasonable cause to anticipate harm to Spencer Hymes; and (2) they failed to use reasonable care in preventing such harm. In support of their motion for summary judgment, Defendants submitted an affidavit from Crawford Ficklin, Jr., warden of the Natchitoches Parish Detention Center. Warden Ficklin stated neither Spencer Hymes nor Jerry Johnson

5

had a history of violence while incarcerated. He had no knowledge of any animosity between Hymes or Johnson prior to this incident. Hymes never informed him he feared being attacked by Johnson. Additionally, the Defendants submitted the affidavits of Loraine Joseph, a correctional officer at the Natchitoches Parish Detention Center. Officer Joseph stated Jerry Johnson did not have a history of violence while incarcerated. She had no knowledge of any animosity between Johnson and Hymes. Hymes never told her he was afraid of being attacked by Johnson. Officer Joseph also stated: "In particular, to my knowledge, prior to 10/8/99, Hymes and Johnson had not argued, disagreed and/or fought for any reason." Affidavits of Officer Jerry Remedis, Officer Derrick Turner, and Sgt. Danny Williamson, all correctional officers at the Natchitoches Parish Detention Center, attested to basically the same facts as Officer Joseph.

The Plaintiffs contend Johnson's attack on Hymes could have been reasonably anticipated by law enforcement officials. Plaintiffs assert law enforcement officials knew of Johnson's violent and volatile personality, behavior disorders, his criminal background as a juvenile and his convictions for simple burglary of an inhabited dwelling, battery, possession of an illegal weapon and armed robbery. In support of their position, the Plaintiffs offered copies of Johnson's school records and his record of criminal convictions, along with affidavits from his mother, Eunice Johnson, Sgt. Brad Walker of the Natchitoches Parish City Police Department and Deputy Kevin Stafford of the Natchitoches Parish Sheriff's Office.

Ms. Eunice Johnson attested to the following:

> That my son has had behavioral disorders since a very early age which started when he was in school. That he was teased and picked on because of his being a special ed student. A copy of the school records attached as Exhibit C reflects the propensity my son had for violence and disruptiveness in his early years. My son's behavior was so disruptive that on occasion he traveled home on a school bus with no

6

other students. Also when he was in very young (kindergarten age) he was sent home by his teacher and it was stated to me that he could not attend school wearing boots because he kicked other students. On numerous occasions my son was home bound from school because of his behavior.

. . . .

During the years prior to my son reaching 17 years of age, he was in and out of Ware Detention Center, Cane River Children's Home and North Louisiana Regional Hospital, all for behavioral problems, his temper and his violent nature.

Deputy Kevin Stafford of the Natchitoches Parish Sheriff's Department attested to the following:

Affiant knows and has personal knowledge of Jerry Johnson a/k/a Jerry Joseph Johnson and commonly referred to in the community as "Lou Dog."

On numerous occasions over the years, affiant has worked with Jerry Johnson, counseled with him and participated in various programs with him. It was obvious to affiant that Jerry Johnson had a propensity for violence and is a very explosive person.

Affiant continued to counsel with Jerry Johnson and has specific recollection of Jerry Johnson coming to the Sheriff's Office seeking my help regarding his anger management. During this conference Jerry Johnson indicated his need for help and stated he was "afraid he was going to hurt somebody."

Sgt. Brad Walker of the Natchitoches Parish Police Department attested to the following:

Affiant knows and has personal knowledge of Jerry Johnson a/k/a Jerry Joseph Johnson and commonly referred to in the community as "Lou."

Affiant further deposed that Jerry Johnson's reputation in the law enforcement community of Natchitoches, Louisiana was a continuing history of violence.

. . . .

In either the year 1999 or the year 2000, I arrested Jerry Johnson on charges of armed robbery. He had entered the Easy Money Loan Company, pulled a knife and demanded money. He was either on parole or probation at the time of the incident. On February 7, 2000, he pled guilty to armed robbery.

We find the affidavits submitted by Plaintiffs are not enough to defeat a motion for summary judgment. Based on jurisprudence by our Supreme Court, the Natchitoches Parish Sheriff's Department must know or have reason to anticipate

7

harm will ensue. Although Ms. Johnson, Deputy Stafford and Sgt. Brad Walker may have known of Johnson's propensity for unprovoked outbursts of violence, Plaintiffs have failed to prove this information was shared with the officers at the correctional facility or placed in Johnson's file. Moreover, the affidavits submitted by the Defendants indicate Johnson did not have a history of violent behavior toward other inmates in the prison nor was there any evidence of prior animosity between Johnson and Hymes to place prison officials on notice. Absent such evidence, we conclude the Plaintiffs will not be able to establish prison officials knew or had reason to anticipate harm to Hymes by Edmonson, and failed to use reasonable care to prevent the harm. *Parker*, 282 So.2d 483. Accordingly, we affirm the decision of the trial court.

## DECREE

Based on the foregoing review of the record, we affirm the decision of the trial court dismissing Plaintiffs claim. All costs of this appeal are assessed to Plaintiffs.

**AFFIRMED**.