McClendon, j.
| ¡¿Plaintiff, whose daughter committed suicide while detained in an isolation cell of a local jail, sought punitive damages against the jailers pursuant to 42 U.S.C. § 1983. To recover damages under Section 1983, plaintiff was required to establish the defendants acted with “deliberate indifference” to the detainee’s serious medical needs. The trial court concluded that the jailers were not deliberately indifferent to the detainee’s serious medical needs and denied punitive damages. Plaintiff has appealed to seek review of the denial of the punitive damages. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
On August 29, 2008, Deputy David Whit-tenberg of the Iberville Parish Sheriffs Office arrested Shantrell Haggan. While Haggan was being transported to the Iber-ville Parish Jail, Haggan, among other comments made to Deputy Whittenberg, threatened suicide, stating that she would hang herself if she was taken to jail. After Deputy Whittenberg arrived at the jail, he relayed the threat of suicide to Deputy Calvin Green, a jailer at the Iberville Parish Jail.
Once they arrived at the jail, Haggan, who was shackled to a bench, exhibited aggressive and combative behavior towards the jailers. Because of her prior *735 threat of suicide and behavior, Deputy Green decided to move Haggan into an isolation cell while he and Deputy Antoinette Dominique located the items necessary to place Haggan under formal suicide watch. Said items included a suicide smock.
Haggan, who was not searched prior to being placed in the isolation cell, was wearing a short skirt with a top that fit tightly around her waist. The top of the blouse overlapped her skirt and the jailers were unaware that Haggan was wearing a belt. Nor was a belt apparent. Deputy Dominique, who had brought Haggan to the restroom before Haggan was placed in the cell, indicated that Haggan “raised her miniskirt and no print in the waist that indicated that she had a belt.... She raised her skirt up and the little top she had on, didn’t indicate a belt buckle or anything on her.”
| sAfter returning to Haggan’s cell 12 to 13 minutes after Haggan had been placed in the isolation cell, Deputy Dominique found Haggan hanging from a pipe in the cell wall. Haggan had used her belt to commit suicide.
Haggan’s mother, Peggy Patterson, instituted a wrongful death action. Plaintiff claimed that Haggan’s suicide was solely and proximately caused by the gross and flagrant recklessness, carelessness and negligence of David Whittenberg, Calvin Green, Antoinette Dominique, and Daniel Falcon.[1] Further, plaintiff alleged that Sheriff Brent Allain failed to properly train Whittenberg, Green, Dominique, and Falcon. Plaintiff, in an amended petition, also alleged that Whittenberg, Green, Dominique, and Falcon were liable for punitive/exemplary damages under 42 U.S.C. § 1983 for acting with deliberate indifference to Haggan’s suicide condition insofar as they left Haggan in a cell unattended with her belt after being on notice of Hag-gan’s suicidal threats.
After a bench trial, the trial court found that Green and Dominique were negligent in placing Haggan in the cell without searching her. The trial court denied plaintiffs punitive damage claim, finding that the defendants did not act with deliberate indifference. The trial court rendered judgment in favor of plaintiff against Dominique, Green, and Sheriff Allain (in his official capacity) in the amount of $300,000.00.[2] Plaintiff appeals the judgment, alleging that the trial court erred in not awarding punitive damages under 42 U.S.C. § 1983.
DISCUSSION
To state a claim under 42 U.S.C § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254-55, 101 L.Ed.2d 40 (1988). Section 1983 imposes liability for violation of rights [¿protected by the Constitution, not for violations of duties arising out of tort law. Baker v. McCollan, 443 U.S. 137, 146, 99 S.Ct. 2689, 61 L.Ed.2d 433.
Deliberate indifference to a prisoner’s serious illness or injury states a cause of action under Section 1983, based on the prisoner’s Eighth Amendment right *736 to be free from cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104-05, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). Because Haggan was a pretrial detainee rather than a convicted prisoner, the due process clause of the Fourteenth Amendment, rather than the Eight Amendment, applies. The Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the detainee. See City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983).
Deliberate indifference describes a state of mind more blameworthy than negligence. Farmer v. Brennan, 511 U.S. 825, 835, 114 S.Ct. 1970, 1978, 128 L.Ed.2d 811 (1994). Eighth Amendment liability requires “more than ordinary lack of due care for the prisoner’s interests or safety.” Id. Deliberate indifference can be equated with recklessness. Acting or failing to act with deliberate indifference to a substantial risk of harm is equivalent to recklessly disregarding that risk. Id., 511 U.S. at 836, 114 S.Ct. at 1978. To be found liable under the Eighth Amendment for denying humane conditions of confinement, a prison official must know of and disregard an excessive risk to inmate health or safety. Id., 511 U.S. at 837, 114 S.Ct. at 1979. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Id.
In the context of protecting a pretrial detainee from self-inflicted harm, defendants will only be liable under Section 1983 if they “had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference.” Jacobs v. West Feliciana Sheriff's Dep’t, 228 F.3d 388, 394 (5 th Cir.2000). Although “the law is clearly ^established that jailers must take measures to prevent inmate suicides once they know of the suicide risk, we cannot say that the law is established with any clarity as to what those measures must be.” Jacobs, 228 F.3d at 394-95 (Quoting Hare v. City of Corinth, 135 F.3d 320, 328-29 (5th Cir.1998) quoting Rellergert v. Cape Girardeau County, Mo., 924 F.2d 794, 797 (8th Cir.1991)). It is well-settled, however, “that negligent inaction by a jail officer does not violate the due process rights of a person lawfully held in custody of the State.” Id. (citing Hare v. City of Corinth, 74 F.3d 633, 645 (5th Cir.1996) citing Davidson v. Cannon, 474 U.S. 344, 348, 106 S.Ct. 668, 671, 88 L.Ed.2d 677 (1986)). Accordingly, to be considered deliberately indifferent to a known suicide risk, an officer’s acts must constitute at least more than a mere “oversight.” Id., 228 F.3d at 395. The plaintiffs must establish that the officers were aware of a substantial and significant risk that the pretrial detainee might kill herself, but effectively disregarded it. Id.
Jacobs, which was distinguished by the trial court, involved a pretrial detainee who committed suicide. Prior to her suicide, the sheriff had been advised that Jacobs tried to kill herself immediately following her alleged crime but was unsuccessful because her gun jammed. Jacobs was placed in a “detox” cell and placed on suicide watch. The cell had several “tie-off” points from which a makeshift rope could be suspended and a blind spot that was not visible to jailers from the control room. Another inmate had previously committed suicide in the very same cell by hanging himself with a sheet from one of the tie-off points. On the third day of her detention, a deputy provided the detainee with a sheet. Jacobs utilized this sheet to *737 hang herself from one of the tie-off points in the cell. Approximately forty-five minutes had elapsed from the time that the deputy last checked on Jacobs to the time she was discovered hanging from the light fixture in her cell.
Jacobs’s children filed a Section 1988 action, naming the sheriff and two deputies as defendants. The defendants moved for summary judgment. The district court denied the motion and the Fifth Circuit affirmed the denial as to the 1 (¡sheriff and one of the deputies, finding that there was sufficient evidence in the record for a jury to conclude that the sheriff and deputy acted with deliberate indifference to Jacobs’s known suicidal tendencies. Jacobs, 228 F.3d at 396-98.
With regard to the sheriff, the court found that summary judgment was properly denied insofar as he ratified the decision of keeping Jacobs in the detox cell, which he acknowledged was not advisable due to its tie-off points and his awareness of a prior suicide in that cell, and he ordered his deputies to give Jacobs a blanket and towel,[3] despite knowledge of her suicide risk. Id., 228 F.3d at 395.
As to the deputy who was denied summary judgment, the court noted that the deputy observed Jacobs lying on the bunk in the detox cell several times with a sheet, despite his awareness that a prior suicide had occurred in that cell using a blanket and that suicidal inmates should not be given loose bedding. The deputy did not take the sheet away or check on Jacobs as frequently as he was required. Id., 228 F.3d at 397.[4]
In contrast, in Brown v. Harris, 240 F.3d 383 (4th Cir.2001), the court affirmed summary judgment in favor of a jail supervisor, Ogden, after a detainee, Brown, committed suicide by hanging himself with his shoelaces three days following his arrival at the jail. Brown’s father filed suit against Ogden, alleging that Ogden’s acts violated Section 1983 insofar as Ogden had been instructed that the detainee was suicidal, but failed to place Brown in a paper gown or have him examined by “medical,” which is what Ogden would have ordinarily done with a suicidal detainee. Id., 240 F.3d at 390. Rather, Ogden responded by immediately placing the detainee on “medical watch,” which 17established constant surveillance of Brown’s cell.[5] In affirming the grant of a motion for summary judgment in favor of Ogden, the Fourth Circuit reasoned:
In the end, if we assume that Ogden was told that Brown was suicidal, he simply took less action than he could have, and by his own admission, should have.... That does not, however, either negate the reasonableness of his response or mean that he acted with “deliberate indifference.” At most, Ogden’s failure to take additional precau *738 tions was negligent, and not deliberately indifferent, because by placing Brown on constant video surveillance, he simply did not “disregard [] an excessive risk to [Brown’s] health or safety.” Farmer, 511 U.S. at 837, 114 S.Ct. 1970 (emphasis added). Negligence, however, does not give rise to a constitutional claim where the operative standard is “deliberate indifference.” See Grayson v. Peed, 195 F.3d 692, 695 (4th Cir.1999) (“Deliberate indifference is a very high standard — a showing of mere negligence will not meet it.”). As a result, we hold that there is no basis for a reasonable factfinder to conclude that Ogden acted with deliberate indifference to the risk which he knew.
Id., 240 F.3d at 390-91.
Herein, plaintiff contends that the trial court erred in not finding that the conduct of Deputies Green and Dominique constituted “deliberate indifference” to Haggan’s safety and life. Plaintiff avers that it is undisputed that both deputies received actual notice of Haggan’s intent to commit suicide. Moreover, the deputies were aware of the reasonable precautionary measures that the sheriffs office required them to take when confronted with actual notice of suicidal threats by a detainee, including obtaining any personal belongings that could be used by inmates to cause death or great bodily harm. Notwithstanding Haggan’s threats, plaintiff asserts that the deputies failed to take reasonable precautionary measures of removing Haggan’s belt, and other dangerous articles of clothing, before making the conscious decision to leave Haggan completely unattended in a dangerous isolation cell.
Plaintiff notes that Lindsay Hayes, her expert in suicide policy and procedure, opined that Ms. Haggan, given her threat of suicide, should have been treated as a high-suicide risk and placed on constant observation. Plaintiff also notes that defendant’s expert in suicide policy and procedure, George |sArmbruster, Jr., also agreed that Ms. Haggan was a high-suicide risk. Moreover, Mr. Armbruster did not disagree with Mr. Hayes’s opinion that constant observation was warranted. Plaintiff asserts that instead of providing continuous and uninterrupted observation, the deputies recklessly ignored the suicide threats by leaving Ms. Haggan completely unattended in a suicide-prone cell with all of her clothing, including her belt.
It is well settled that an appellate court cannot set aside a trial court’s findings of fact in the absence of manifest error or unless those findings are clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Plaintiff asserts, however, that the trial court erroneously applied the “deliberate indifference” standard, apparently requesting that this court conduct a de novo review.[6] We disagree. Nevertheless, even utilizing a de novo review, we conclude that the trial court did not err in reaching its conclusion.
Although deputies Green and Dominique were advised that Haggan threatened suicide while in route to the jail, Haggan *739 never threatened suicide in the presence of the deputies once she arrived at the jail. It was not evident that Haggan was wearing a belt despite her tightly fitted blouse and skirt. Further, both deputies testified that they were unaware that Haggan was in possession of a belt. Green and Dominique, recognizing the seriousness of Hag-gan’s threat of suicide, were in the process of implementing the suicide watch procedures. Due to Haggan’s behavior, however, the decision was made to place her in the isolation cell while the deputies looked for the necessary items to place her on suicide watch, including a suicide smock. The cell had been previously used for people who were intoxicated and who were threatening to harm themselves. No suicide had ever occurred in the isolation cell and no suicide had ever taken Rplace at the jail. Moreover, Haggan was left unobserved for 12-13 minutes. Cf. Jacobs, wherein the sheriff and deputy were aware of a prior suicide in the cell and the inmate was provided with a sheet and left unobserved for 45 minutes.
Clearly, Green and Dominique, by their own admission, were negligent in failing to frisk Haggan and remove the belt before placing Haggan in the isolation cell. The deputies’ negligence, however, is insufficient to constitute deliberate indifference. Their actions in, among other things, attempting to locate a suicide smock to formally put Haggan on suicide watch reflects that the deputies did not simply “[disregard] an excessive risk to [Haggan’s] health or safety.” Farmer, 511 U.S. at 837, 114 S.Ct. at 1979. Accordingly, even utilizing a de novo standard of review, we conclude that the evidence does not establish that defendants’ conduct constituted “deliberate indifference.” Plaintiffs assignments of error are without merit.
CONCLUSION
For the foregoing reasons, the trial court’s January 4, 2012 judgment is affirmed. Costs of this appeal are assessed to plaintiff, Peggy Patterson.
AFFIRMED.

. Daniel Falcon was the assistant warden at the Iberville Parish Jail. On the morning of the incident, the jailers called him at home seeking authorization to place Ms. Haggan in the isolation cell.

. The trial court dismissed, with prejudice, plaintiffs claims against Sheriff Allain, individually, Falcon, and Whittenberg. Plaintiff has not sought review of any of these dismissals on appeal.

. It is unclear whether the sheet was in lieu of or in addition to the blanket and towel ordered by the sheriff.

. By contrast, the deputy in whose favor summary judgment was granted, although he was aware that Jacobs was a suicide risk, did not make the decision to place her in the detox cell, had nothing to do with the order that Jacobs be given a blanket or towel, and had no knowledge of the prior suicide in that cell. Jacobs, 228 F.3d at 398. Although he did not check on Jacobs every fifteen minutes as required by the sheriff’s unwritten policy, the court found that such negligence was insufficient to support a finding of deliberate indifference. Id.

.Although the detainee's cell was under constant surveillance, the officer responsible for monitoring the detainee's cell, as well as 27 others, by way of small video screens did not notice that the detainee had hung himself until after the “code” was called by someone else.

. With regard to questions of law, appellate review is simply a review of whether the trial court was legally correct or legally incorrect. Boyd v. Boyd, 2010-1369 (La.App. 1 Cir. 2/11/11), 57 So.3d 1169, 1174. A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. Evans v. Lungrin, 97-0541 (La.2/6/98), 708 So.2d 731, 735. Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. Id. When such a prejudicial error of law skews the trial court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts de novo. Id.