NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2021 CA 0987

NORMAN DEAN

VERSUS

SERGEANT SAMANTHA JACKSON, SERGEANT DEMOND McCOY,
SERGEANT PHILLIP WILLIAMS, AND STATE OF LOUISIANA THROUGH
LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS,
LOUISIANA STATE PENITENTIARY

Judgment Rendered: __**MAR 0 7 2022**__

* * * * *

On Appeal from the
Twentieth Judicial District Court
In and for the Parish of West Feliciana
State of Louisiana
Trial Court No. 23141

The Honorable Kathryn E. Jones, Judge Presiding

* * * * *

Donna U. Grodner
Baton Rouge, Louisiana

Attorney for Plaintiff/Appellant
Norman Dean


Jeff Landry
Attorney General
Baton Rouge, Louisiana

Attorneys for Defendants/Appellees
Sgt. Samantha Jackson, Sgt. Phillip
Williams, and the State of Louisiana,
through the Department of Public
Safety and Corrections

Jabrina C. Edwards
Assistant Attorney General
Shreveport, Louisiana


Wm. David Coffey
Assistant Attorney General
New Orleans, Louisiana

* * * * *

BEFORE:   WHIPPLE, C.J., PENZATO, AND HESTER, JJ.

Hester J., dissents and assigns reasons

**PENZATO, J.**

Plaintiff appeals a summary judgment that dismissed his claims seeking recovery for injuries sustained as the result of an altercation with a fellow inmate at Louisiana State Penitentiary in Angola, Louisiana. For the following reasons, we affirm the trial court judgment.

## FACTS AND PROCEDURAL HISTORY

On December 20, 2016, plaintiff, Norman Dean, an inmate housed at the Louisiana State Penitentiary in Angola, Louisiana, was asleep in his cell when a fellow inmate threw scalding liquid on him. Dean was assigned to Cell Block D, which contained a gate and dorm doors that he alleged were to remain locked at all times. However, on the date of the incident, the gate and doors were unlocked, which allowed the fellow inmate to enter Cell Block D and injure Dean.

Dean filed suit against the State of Louisiana, through the Department of Public Safety and Corrections (State), and several individual defendants, including Sergeant Samantha Jackson and Sergeant Phillip Williams, alleging they were negligent in failing to protect him from the attack by his fellow inmate.[1] Dean contented that the defendants failed to provide a safe place to reside, failed to lock the doors and gates that were supposed to be locked, failed to maintain security, failed to provide safety precautions, and were inattentive and reckless in the workplace.

The defendants filed a motion for summary judgment contending that a non-party inmate, Justin Savoy, threw scalding hot water and/or bleach[2] on Dean while both were incarcerated and that the State's actions or inactions do not show that it had reasonable cause to anticipate harm to Dean prior to the incident and had

---

[1] A third individual defendant, Sergeant Demond McCoy, was also named in the petition, but Dean was unable to effect service upon him.

[2] In his petition, Dean alleged that scalding bleach was thrown on him. During his deposition, Dean also referred to hot water being thrown on him.

2

sufficient time to act. In support of its motion for summary judgment, the State attached excerpts from Dean's deposition, the petition, and a copy of Dean's enemy list.[3]

Dean opposed the motion for summary judgment and relied on excerpts from his deposition; defendants' discovery responses, including photographs of Dean's injuries and Penitentiary Directive No. 09.007/B regarding the use of restraints; and Dean's discovery responses, including the DPSC Department Regulation No. C-02-013 entitled "Field Operations," DPSC Corrections Services Employee Manual, and Certified Directive No. 13.019 entitled "Suicide Prevention, Suicide Intervention and Post Suicide Management."

A hearing on the motion for summary judgment was held on March 24, 2021. At the conclusion of the hearing, the trial court granted the defendants' motion, finding no genuine issues of material fact and stating:

> Because I cannot get past the first prong of the mandated analysis in *Parker* [*v. State*, 282 So. 2d 483 (La. 1973)] that the State knows or should have reason to anticipate that harm would ensue. I cannot find that [their]—the negligent actions of the guards in not following policy as to keeping doors or gates locked like they should have. I cannot find that that is going to put liability on the State.

In conformance with the ruling, the trial court signed a judgment on May 10, 2021, dismissing Dean's claims against the defendants. It is from this judgment that Dean appeals.

## ASSIGNMENTS OF ERROR

Dean asserts two assignments of error on appeal: (1) the trial court erred in failing to apply a duty-risk analysis and finding that Dean was required to give notice to the State of a threat of harm from a specific inmate, and (2) the trial court incorrectly applied *Parker*. We address these interrelated assignments of error simultaneously.

---

[3] Dean's "enemy list" is a list of inmates, compiled from a screening of Dean's inmate record, with whom Dean has had problems in the past.

## APPLICABLE LAW

### Standard of Review

A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. *Lewis v. Safeway Insurance Company of Louisiana*, 2020-0999 (La. App. 1st Cir. 4/16/21), 324 So. 3d 121, 124-25. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). A "genuine" issue is a triable issue. An issue is genuine if reasonable persons could disagree. Conversely, if on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. *Washington v. Guillotte*, 2018-0301 (La. App. 1st Cir. 12/21/18), 268 So. 3d 1048, 1053. Because it is the applicable substantive law that determines materiality, whether a particular issue in dispute is material can be seen only in light of the substantive law applicable to the case. *Georgia-Pacific Consumer Operations, LLC v. City of Baton Rouge*, 2017-1553 (La. App. 1st Cir. 7/18/18), 255 So. 3d 16, 22, *writ denied*, 2018-1397 (La. 12/3/18), 257 So. 3d 194.

The burden of proof rests on the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is then on the adverse party to produce factual support sufficient to establish the

4

existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1).

In reviewing a trial court's ruling on a motion for summary judgment, an appellate court reviews the evidence *de novo* using the same criteria that govern the trial court's determination of whether summary judgment is appropriate. *Bourg v. Safeway Insurance Company of Louisiana*, 2019-0270 (La. App. 1st Cir. 3/5/20), 300 So. 3d 881, 888. Thus, appellate courts ask the same questions: whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. *Jones v. Anderson*, 2016-1361 (La. App. 1st Cir. 6/29/17), 224 So. 3d 413, 417.

**Application of *Parker* and Duty-Risk Analysis**

Dean's deposition testimony evidences that on December 20, 2016, the date of this incident, he was on suicide watch in the lockdown area of the prison known as Cell Block D. Earlier in the day, Dean attended disciplinary court at the prison and informed Major Willie Roscoe that he had enemies who were trying to get him because those enemies had confused him with his brother, Noel Dean, who is also a prisoner. Dean also testified that he requested that Major James Oliver contact the social worker to let her know that his life was in danger. Dean explained that inmates from other cellblocks were permitted to work in the lockdown area as orderlies and that threatening messages were sent to him through the orderlies under the false impression that Dean was his brother. However, Dean could not identify any person or persons who sent the threatening messages. Dean also stated that he reported the threatening messages to Major Oliver but agreed that he did not add any names to his enemy list.

Around lunchtime, a third inmate with the nickname of "Freddy Krueger" spit on Savoy, one of the orderlies. Later, intending to retaliate against "Freddy Krueger," Savoy mistakenly threw scalding hot water and/or bleach on Dean. Dean

admitted that he and Savoy had never spoken before the incident and that Savoy had not previously threatened him. Dean was sleeping at the time of the incident and stated that Savoy mistook him for "Freddy Krueger" – "This dude [Savoy] came later on to retaliate. He just came to the wrong cell." Dean admitted that the incident had "nothing to do with [his] brother."

Dean testified that the tier door to Cell Block D was unlocked at the time of the incident and that other gates and doors were also unlocked. Dean explained that an inmate, assigned to be a "tier walker," walks the length of the tier, presses clocks positioned at each end, goes through a door to go upstairs, walks the length of the upper tier, and presses other clocks. This requires the "tier walker" to go through multiple doors, which are kept unlocked. Dean asserted that the tier doors, which should have been locked, were left unlocked to make the tier walk's job easier. Dean also maintained that no one was at the security desk at the time of the incident. Otherwise, that person would have been in a position to observe Savoy, the offending inmate, heating up the bleach and/or water.

The State asserts that under *Parker*, the Louisiana Supreme Court has set forth a two-prong test when deciding inmate injury cases. According to the State, the first prong requires Dean to show the defendants either knew or had reason to anticipate that the offending inmate would attack Dean, while the second prong requires Dean to show the defendants failed to exercise reasonable care to protect him. Dean counters that the trial court misapplied *Parker*, that the trial court disregarded the totality of the facts of this case, and that *Parker* "may no longer be controlling law in this State, where the duty risk analysis has been applied since the 1980s to negligence cases ...."

*Parker* clearly states:

A penal institution is not an insurer of an inmate against attacks by other inmates. The standard is that of reasonable or ordinary care. The majority rule is that in order to hold the penal authorities liable for an

6

injury inflicted upon an inmate by another inmate, the authorities must know or have reason to anticipate that harm will ensue and fail to use reasonable care in preventing the harm.

*Parker*, 282 So. 2d at 486. In *Parker*, the penal institution received notice that the plaintiff feared an attack from a particular fellow inmate. The court held that "[s]uch a notice alone, however, is insufficient to support liability under the above rule." *Id.* The court further recognized that "[s]cores of reports of this kind are received weekly in the prison environment. For liability, the law requires at least adequate reason to anticipate harm and failure to take reasonable action to avert it." *Id.*

This court in *Walden v. State*, 430 So. 2d 1224, 1227 (La. App. 1st Cir.), *writ denied*, 435 So. 2d 430 (La. 1983), reiterated that *Parker* sets forth the correct legal duty imposed upon penal authorities for the protection of inmates against attacks by other inmates, which this court noted is often called the "bad blood" rule. This court held that even though the guards may have violated policies designed to keep inmates out of each other's cells, no legal standard of care was violated when there was no reason to anticipate an altercation between the victim inmate and the offending inmate. *Id.*

Under circumstances similar to *Parker*, an inmate had his throat cut and was stabbed by a fellow inmate in *State ex rel. Jackson v. Phelps*, 95-2294 (La. 4/8/96), 672 So. 2d 665. The Louisiana Supreme Court noted that the injured inmate never told prison officials that he was in fear of an attack by the fellow inmate. Furthermore, prison officials had no notice of any animosity between the two inmates. *Jackson*, 672 So. 2d at 666. Determining the prison had no liability, the Louisiana Supreme Court stated:

> While a penal institution is not an insurer of an inmate against attacks by other inmates, penal authorities have a duty to use reasonable care in preventing harm after they have reasonable cause to anticipate it. Whether the state breached its duty will depend on the facts and circumstances of each case. Thus, we must determine whether the penal authorities at [the prison] had reasonable cause to anticipate harm

7

to plaintiff **and, if so, whether they failed to use reasonable care in preventing such harm**.

*Jackson*, 672 So. 2d at 667 (emphasis added; citations omitted).

Based on the above cases, we agree with the trial court that the inmate must first show that the prison officials had reasonable cause to anticipate harm to that inmate before reaching the inquiry of whether the prison officials failed to use reasonable care in preventing the harm. The facts in the record reflect that fellow inmates often confused Dean with his brother, that Dean received threatening messages intended for his brother, and complained to Major Oliver about these threats. However, Dean could not identify any sender of those threatening messages and did not add any individual to his enemy list.

Dean admitted that the incident involving Savoy was unrelated to the threats against him, which were intended for his brother. Instead, the incident involving Savoy occurred because Savoy mistakenly believed Dean was a third inmate, "Freddy Krueger." It is undisputed that Savoy intended to retaliate against "Freddy Krueger" and did not intend to harm Dean. Dean had no relationship with Savoy prior to the incident and the two had never spoken. There is no evidence in the record that Dean felt threatened by Savoy or that he ever informed the prison officials that he thought he might be harmed by Savoy. Therefore, DPSC had no notice that harm might come to Dean by Savoy, and it could not reasonably anticipate such harm.

Dean argues that *Parker* "may no longer be controlling law in this State, where the duty risk analysis has been applied since the 1980s to negligence cases...." As noted by the State, the duty-risk analysis was adopted by the Louisiana Supreme Court in 1962 in *Dixie Drive It Yourself System New Orleans, Co. v. American Beverage Co.*, 137 So. 2d 298 (La. 1962). *Parker* was decided in 1973, over a decade later, also by the Louisiana Supreme Court.

8

Furthermore, Dean relies upon several cases that are either distinguishable from the present case or support the State's position, like *Norred v. Litchfield*, 2006-2156 (La. App. 1st Cir. 11/2/07), 977 So. 2d 1004. *Norred* supports the trial court's analysis that Dean must first demonstrate that the State had reasonable cause to anticipate the harm before addressing the issue of whether prison officials violated a duty of reasonable care. The court in *Norred* stated:

> Our law provides, and [the Sheriff] generally acknowledges, that prison authorities owe a duty to exercise reasonable care to protect inmates from harm. This duty, however, is qualified by a requirement that penal authorities have reasonable cause to anticipate the harm: "penal authorities have a duty to use reasonable care in preventing harm **after they have reasonable cause to anticipate it.**"

*Norred*, 977 So. 2d at 1006 (*quoting Jackson*, 672 So. 2d at 677; emphasis in original; citation omitted). The *Norred* court determined that the evidence presented by the inmate did not suggest that the Sheriff had any cause to anticipate that the inmate would fall out of the bed and harm himself. *Id.* Therefore, summary judgment in favor of the Sheriff was affirmed.

Dean also asserts that *Pete v. State, Department of Corrections*, 2017-1131 (La. App. 3rd Cir. 5/9/18), 247 So. 3d 1084, applied the duty-risk analysis to an inmate case. However, the court relied upon the following language of *Jackson*, "[w]hile a penal institution is not an insurer of an inmate against attacks by other inmates, penal authorities have a duty to use reasonable care in preventing harm after they have reasonable cause to anticipate it." *Id.* at 1095 (*quoting Jackson*, 672 So. 2d at 667). The issue before the court was "whether, based on the record evidence, the Sheriff had reasonable cause to anticipate an inmate could be harmed by the throwing of limestone aggregate **and, if so**, whether the Sheriff failed to use reasonable care in preventing this harm." *Pete*, 247 So. 3d at 1095 (emphasis added). The court in *Pete* found that the Sheriff had reasonable cause to anticipate that limestone aggregate in the trustee yard could be used as a weapon. *Id.* Therefore,

9

*Pete* supports the State's argument in the present case that an inmate must first show that DPSC had reasonable cause to anticipate an inmate could be harmed.

Dean also relies on *Marsellus v. Department of Public Safety and Corrections*, 2004-0860 (La. App. 1st Cir. 9/23/05), 923 So. 2d 656, 661, in support of his argument that, when a correctional officer fails to follow the rules at a penal institution, the officer has reasonable cause to anticipate harm to someone. In *Marsellus*, an officer at the correctional facility challenged the disciplinary action taken after the officer was accused of sleeping while on duty. The opinion does include language that "prison security officers who are inattentive to their duties 'for even a few minutes' create unacceptable safety risk." *Id.* at 661. However, the matter was not an inmate injury case, so the court did not discuss the applicability of *Parker*. Therefore, we find *Marsellus* is inapplicable.

Dean further relies on *Patterson v. Allain*, 2012-1365 (La. App. 1st Cir. 4/26/13), 116 So. 3d 732, 736-37, *writ denied sub nom. Patterson ex rel. Haggan v. Allain*, 2013-1223 (La. 9/13/13), 120 So. 3d 701. There, the court considered whether the actions of the officers, who admitted they were negligent in not frisking and removing a belt from an inmate who committed suicide, arose to the level of deliberate indifference sufficient to state of cause of action pursuant to 42 U.S.C. § 1983. As the court noted, to succeed with a deliberate indifference claim under the Eighth Amendment, there must be more than ordinary lack of due care for the prisoner's safety. *Id.* at 736. The present case does not involve a claim of deliberate indifference sufficient to state a cause of action pursuant to 42 U.S.C. § 1983, and the analysis contained in *Patterson* does not apply.

Dean also cites *Breaux v. State*, 326 So. 2d 481, 482-83 (La. 1976), which found the State liable for the negligence of the prison guards who failed to protect an inmate while escorting a younger inmate to another dormitory. The Louisiana Supreme Court applied *Parker* and held that the State should have reasonably

anticipated an attack after it had been reported that particular inmates had threatened the younger inmate. *Breaux*, 326 So. 2d at 482. The Court specifically stated, "We find that, even under this standard enunciated by *Parker*, the state is here liable for its employee's failure to use reasonable care in preventing harm after they had reasonable cause to anticipate it." *Id.* (italics added). In contrast, in the present case, there has been no evidence that the State had any reasonable cause to anticipate Savoy's attack. Therefore, the issue of whether the State failed to use reasonable care in preventing harm is not reached.[4]

Dean further maintains that the State's argument that it had no reasonable cause to anticipate that a specific inmate, Savoy, would harm Dean is untenable. However, this court has consistently held that where there is no evidence that prison officials should anticipate an altercation, the State has no reasonable cause to anticipate harm and there can be no liability. In *McGee v. State Through Louisiana Department of Corrections*, 417 So. 2d 416, 418 (La. App. 1st Cir.), *writ denied*, 420 So. 2d 981 (La. 1982) (emphasis added), the court noted that a dispute arose spontaneously, and "[t]here was no evidence at the hearing indicating the prison officials knew of prior threats or previous confrontations **between these two inmates**." Therefore, this court held that the State had no reason to anticipate that harm would ensue. *Id.* This court, in *Shields v. State Through Department of Corrections*, 380 So. 2d 123, 125 (La. App. 1st Cir. 1979), *writ denied*, 382 So. 2d 164 (La. 1980), also determined that the prison officials had no warning that the injured inmate was in danger and "no reason to anticipate that [the offender] might attack him."

In the more recent case of *Harrison v. Natchitoches Parish Sheriff's Department*, 2004-928 (La. App. 3rd Cir. 12/15/04), 896 So. 2d 101, 105, *writ*

---

[4] Dean cites numerous other cases pertaining to the duty-risk analysis, which do not involve inmates injured at a penal facility or the application of the *Parker* two-prong test. Therefore, we find these cases are inapplicable.

*denied*, 2005-0133 (La. 4/1/05), 898 So. 2d 349, the court held that the inmate's evidence was insufficient to defeat summary judgment in favor of the Sheriff. The court noted that the Sheriff must know or have reason to know that harm will ensue. Although the offender had a propensity for unprovoked outbursts of violence, this information was not shared with the Sheriff. There was no evidence of prior animosity between the offender and the injured inmate to place prison officials on notice. Absent such evidence, the court concluded that the injured inmate was unable to establish that prison officials knew or had reason to anticipate harm to "the [injured inmate] by [the offender], and failed to use reasonable care to prevent the harm." *Id.*

We find the evidence submitted by Dean insufficient to defeat a motion for summary judgment. Based on the jurisprudence, the State must know or have reason to anticipate harm will ensue. The facts reflect that even Dean himself had no reason to anticipate the harm which occurred; thus, we conclude that Dean will not be able to establish that prison officials had reason to anticipate harm to him by Savoy. Therefore, we affirm the decision of the trial court.

## CONCLUSION

For the reasons set forth above, the May 10, 2021 judgment of the trial court granting summary judgment in favor of defendants, the State of Louisiana, through the Department of Public Safety and Corrections, Sergeant Samantha Jackson, and Sergeant Phillip Williams, and dismissing the claims of plaintiff, Norman Dean, is affirmed. All costs are assessed against Norman Dean.

**AFFIRMED.**

12

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2021 CA 0987


NORMAN DEAN

VERSUS

SERGEANT SAMANTHA JACKSON, SERGEANT DEMOND McCOY,
SERGEANT PHILLIP WILLIAMS, AND STATE OF LOUISIANA THROUGH
LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS,
LOUISIANA STATE PENITENTIARY

CHH

**HESTER, J. dissenting,**

I respectfully disagree with the decision of the majority. The State is obligated

to provide facilities and environments reasonably calculated to protect inmates from

the danger of an armed attack by fellow inmates. Herein, Norman Dean, who was

in protective custody in a maximum-security prison, reported threats he had received

from unknown inmates to multiple officers because other inmates mistook him for

his white supremacist brother. In addition, he told one officer that he feared for his

life. Even so, the required security procedures of keeping the gates locked to prevent

inmates from entering different tiers of the prison were not followed, which allowed

the orderly, Justin Savoy to be on Dean's tier and pour hot bleach on him. With the

benefit of hindsight, we now know that Savoy attacked Dean because he thought he

was the inmate that spit on him earlier, and there were no prior issues between Savoy

and Dean. However, hindsight is not the test, and the decisions of the prison officials

must be considered using the information existing at the time of the incident. See

*Parker v. State*, 282 So. 2d 483, 487 (La. 1973). At the time of the incident, the

officers were aware that Dean was in fear of being attacked, and the failure to follow

security measures of locking the gate enabled Dugas to attack Dean. Considering

this evidence, genuine issues of material fact remain as to whether the officers had at least an adequate reason to anticipate harm to Dean and failed to take reasonable action to avert it. <u>See</u> *Parker*, 282 So. 2d at 486. For these reasons, I dissent.